# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NORBERT BASIL MacLEAN III,<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | Case No. 04-0448-C<br><br>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF<br><br>Judge: Hon. Mary Ellen Coster Williams |

COMES NOW, plaintiff Norbert Basil MacLean III (hereinafter the "plaintiff"), by and through his undersigned attorneys, hereby submits his opposition to defendant United States of America (hereinafter the "defendant" or "Government") motion to dismiss under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims as hereinafter more fully stated:

## I. PRELIMINARY STATEMENT

Defendant argues that plaintiff's claims are barred under the six year statute of limitations pursuant to 28 United States Code ("U.S.C.") § 2501 because plaintiff was discharged from active Naval service on 29 August 1994 as a result of an illegal general court-martial which violated the plaintiff's due process rights guaranteed under the Fifth Amendment, U.S. Constitution. Significantly, defendant does not dispute the allegation that it concealed critical documented evidence. Additionally, defendant fails to recognize well-established case law that requires a plaintiff who seeks to collaterally attack a military court-martial conviction to first exhaust military judicial remedies prior to filing a claim in this Honorable Court under the terms of the Tucker Act, 28 U.S.C. § 1491(a)(1) or the Fifth Amendment to the U.S. Constitution. Thus, defendant's statute of limitation argument fails.

Defendant concealed for nearly a decade critical documentary evidence from plaintiff and his military and civilian attorneys during the court-martial and the 1994 direct appeal of the court-martial. This fact is substantiate by retired Marine Corps Lieutenant Colonel ("LTCOL") Steven P. Hammond and former Navy Judge Advocate General Lieutenant ("LT") Kenneth Nielsen, who have provided declaration sworn under penalty of perjury. The Government fails to dispute the declarations of LTCOL

Hammond and LT Nielsen. Once plaintiff and his attorneys discovered the concealed critical documented evidence, plaintiff promptly filed a petition for extraordinary relief with the military courts. On 28 July 2003, NMCCA then granted review of the petition for extraordinary relief and found good cause to issue an order to show cause against the Government and granted several of plaintiff's motions, including a motion to compel the Government to produce additional missing court-martial documents from the original record-of-trial.[1] However, on 23 December 2003, in a seven page opinion, NMCCA denied the petition for extraordinary relief. Plaintiff's complaint alleges that NMCCA failed to fairly and fully address the significant constitutional questions raised by the plaintiff.

It would be inequitable for the Government to benefit from concealing critical documentary evidence that would have enabled the plaintiff to raise these issues at an earlier time. Since obtaining the release of the concealed evidence, plaintiff and his military and civilian attorneys have been diligent in prosecuting the significant constitutional questions within the military appellate courts and have exhausted all available military judicial remedies. Thus, for the reasons set forth herein, defendant's motion must be denied.

## II. <u>ARGUMENTS</u>

### A. <u>Standard of Review for Motions to Dismiss Under Rule 12(b)(6), Federal Rules of U.S. Court of Federal Claims</u>

---

[1] The Government never produced the missing recommendation for general court-martial. Rules for Courts-Martial 401(c)(2)(A). The Government has claimed it cannot locate the missing document. (Complaint at ¶ 24)

Defendant has moved this Honorable Court to dismiss the action under Rule 12(b)(6) of the Rules of the U.S. Court of Federal Claims alleging the plaintiff's claims are barred by the statute of limitations. The jurisdiction of a federal court must be established as a threshold matter before the court may proceed to the merits in any action. *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 88-89 (1998). Plaintiff has clearly pled this Honorable Court's jurisdiction to review the merits of the significant constitutional questions raised in plaintiff's court-martial. (Complaint at ¶ ¶ 2 – 6) "In evaluating [a Rule 12(b)(6)] motion, the court must accept all well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Ainslie v. United States*, 355 F.3d 1371, 1373 (Fed. Cir. 2004); *Pi Elecs. Corp v. United States*, 55 Fed.Cl. 279, 285 (Fed Cl. 2003); *Davis v. Monroe County Bd. Of Educ.*, 526 U.S. 629 (1999); *Summers Oil Col. V. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001).

Accordingly, plaintiff's well-pled Complaint together with the evidence submitted with the Complaint[2] establishes this Court's jurisdiction.

### B. Concealment Of Documentary Evidence In Cases Which Collaterally Attack A Court-Martial Conviction Tolls The Tucker Act's Six-Year Statute Of Limitations Or, In The Alternative, The Date On Which To File A Claim Accrues On The Date Of Exhaustion Of Military Judicial Remedies

None of the authorities defendant relies upon in its moving papers involve a collateral attack of a court-martial under the terms of the Tucker Act and the due process clause of the Fifth Amendment to the U.S. Constitution. Moreover, defendant's cited

[2] Plaintiff provided sworn declarations from retired LTCOL Hammond and former JAG LT Nielsen to substantiate and corroborate that the defense in plaintiff's court-martial both at trial and on direct appeal did not have documented evidence to support the significant constitutional questions now being raised. (Exhibits T, U to Complaint) The Government, in its moving papers, fails to dispute these two declarations.

cases fail to address the prerequisite requirement of exhaustion of military judicial remedies prior to filing suit in this Honorable Court to collaterally attack a court-martial.

1. The Concealed Documented Adjudicated UCMJ Article 138 Complaint Against The Special Court-Martial Convening Authority Was Highly Relevant To Establish Claims of: (1) The Special Court Martial Convening Authority Had An Other Than Official Interest In Plaintiff's Prosecution; and (2) A Fatal Jurisdictional Defect In The Creation Of The Court-Martial Rising To A Level Of Deprivation of Due Process.

On 20 February 1992, plaintiff exercised his rights under Uniform Code of Military Justice ("UCMJ") Article 138 (10 U.S.C. § 938) and the First Amendment to the U.S. Constitution to redress grievances of a superior officer who plaintiff believed committed a wrong against him. (Complaint at ¶ 22). The UCMJ Article 138 Complaint alleged, *inter alia*, a wrongful demotion in rank and harassment by Commander Robert W. Cosgriff, who would later be the special court-martial convening authority ("SPCMCA") in plaintiff's general court-martial case. (Complaint at Exhibits "F" "K")

On or about 4 May 1993, the Acting Assistant Secretary of the Navy for Manpower and Reserve Affairs upheld the adjudicated UCMJ Article 138 Complaint against the SPCMCA in favor of plaintiff as true in fact and correct in law. Plaintiff was reinstated back to Petty Officer Third Class. This critical piece of evidence was never provided to either the defense or appellate defense. (Complaint at ¶ 25) Former Navy Judge Advocate General Corps ("JAG Corps") Lieutenant Kenneth Nielsen provided a declaration last year to NMCCA indicating that he was never provided the final adjudication of the complaint of wrongs nor was that documented evidence ever provided to the defense by the Government. (Complaint at ¶ 25; Exhibit "U" to Complaint). Lieutenant Nielsen has stated that there was no way at the court-martial to show that plaintiff's complaint against the special court-martial convening authority had any merit

because it had not been adjudicated. (*Id*.) Significantly, the Government fails to dispute the declaration of former JAG Corps Lieutenant Nielsen in its moving papers.

Further, retired Marine Corps Lieutenant Colonel Steven Hammond, who was the detailed military appellate defense counsel in plaintiff's 1994 direct review of his general court-martial under UCMJ Article 66(c) (10 U.S.C. 866(c)), provided a declaration in 2003 indicating that he was never provided the evidence showing plaintiff's UCMJ Article 138 Complaint against the SPCMCA authority had merit and therefore confined his appellate argument to one of unlawful command influence. (Complaint at ¶ 25; Exhibit "T" to Complaint.) Lieutenant Colonel Hammond specifically cited the fact that plaintiff filed a UCMJ Article 138 Complaint against the SPCMCA, but never indicated what ever became of the Complaint because the evidence was never made available to the plaintiff or the appellate defense. (*Id*.) The Government also fails to dispute Lieutenant Colonel Hammond's declaration in its moving papers.

The appellate defense also filed a motion to compel in 1994 that the military court, NMCMR, (renamed NMCCA) denied on 23 March 1994.[3] (Complaint at footnote 10.) The Government fails to dispute this allegation in its moving papers.

The relevancy of the favorable adjudicated UCMJ Article 138 Complaint is that the same superior officer that was being complained about was permitted to make a recommendation for general court-martial pursuant to Rules of Courts-Martial 401(c)(2)(A), recommending general court-martial[4] over the contrary findings of the

[3] This also evidences that the military appellate courts did not fully and fairly consider significant constitutional questions even back in 1994.

[4] This recommendation for general court-martial is missing from the plaintiff's original record-of-trial. (Complaint at ¶ 24). Despite a Congressional inquiry into the missing document; a granted motion to compel by NMCCA; and an order to show cause by a federal district court in a

impartial UCMJ Article 32 (10 U.S.C. § 832) investigating officer ("I.O.). The I.O. held that reasonable grounds *did not* exist to believe plaintiff committed the charged offenses. (Complaint at ¶ 23; Exhibit "L" to Complaint) The concealed favorable adjudicated UCMJ Article 138 Complaint provided the critical evidence to establish that the SPCMCA had an "other-than-official" interest in the prosecution of plaintiff rising to level of constitutional deprivation of due process guaranteed the plaintiff under the Fifth Amendment to the U.S. Constitution. It also provided evidence to establish a fatal jurisdictional defect in the creation of the general court-martial rising to a level of constitutional deprivation of due process. Without this critical evidence there was no way for plaintiff and his attorneys to establish a constitutional deprivation of due process.

Judge Lettow of this Court, recently held in *Mudge v. U.S.*, 59 Fed. Cl. 527 (Fed. Cl. 2004) that "[a] cause of action does not necessarily accrue on the date of the wrongful act, but instead when the plaintiff has a legal right to maintain his or her action, leaving the court to ascertain when such action effectively could be initiated." (citing 1 Calvin W. Corman, *Limitation of Actions* § 6.1, at 373-75 (1991) *Id*. at 536. As in *Mudge*, the instant case "does not fit comfortably within the usual paradigm for computing the date on which a claim accrues." (*Id*.) While the plaintiff was discharged from active Naval service on 29 August 1994, the favorable *documented* adjudicated UCMJ Article 138 Complaint did not come into plaintiff's existence until 2002 when the Office of the Assistant Secretary of the Navy first provided the final adjudication to one of plaintiff's

---

Freedom of Information Act case against the Navy, the Government claims it is unable to locate the missing document. (*Id*.; Exhibits N, O, P, Q to Complaint)

military appellate defense attorneys.[5] (Complaint at ¶ ¶ 3; 18) In fact, this final adjudication is not even apart of plaintiff's Naval service record. (Complaint at ¶ 15.) Additionally, the recently released concealed document shows it was sent to plaintiff's previous command. (Complaint at ¶ ¶ 3; 25) The Government fails to dispute this allegation in its motion to dismiss.

LTCOL Hammond has provided a declaration stating that he was never provided with the final adjudication of the 138 Complaint in plaintiff's direct appeal of the court-martial in 1994. (Exhibit "T" to Complaint.) Thus plaintiff only had a legal right to maintain the instant action[6] after: (1) the final documented adjudication of the UCMJ Article 138 Complaint was disclosed to plaintiff in 2002, establishing the evidence proving that his complaint against the special court-martial convening authority that recommended his general court-martial was meritorious, and (2) plaintiff exhausted all available military judicial remedies, which occurred on 9 February 2004. Not until these two events took place did this Honorable Court have jurisdiction of this action or were the claims ripe[7] for this Court's judicial review. *Beekwilder v. United States*, 55 Fed.Cl.

---

[5] On 28 May 2002, the NMCCA requested the Navy Judge Advocate General to appoint military appellate counsel to represent the plaintiff. (Complaint at ¶ 16) Lieutenant Marcus N. Fulton, USN and Lieutenant Colin Kisor, USNR were appointed as plaintiff's military appellate defense attorneys and have worked on plaintiff's case with the undersigned during the appeals within the military justice system.

[6] Plaintiff also alleged that there was a relevant change in military case law while his case was on direct review. (Complaint at ¶ 31.) Plaintiff is entitled to have the change in the law applied to his case. *Teague v. Lane*, 489 U.S. 288, 305-08 (1989); *Griffith v. Kentucky*, 479 U.S. 314, 322-28(1987). Given the disclosure of the concealed documented evidence, together with an intervening change in the case law affecting a fundamental right, it is now appropriate to grant relief. *Garret v. Lowe*, 39 M.J. 293, 295 (CMA 1994).

[7] Plaintiff's claims in this action only became ripe after the significant constitutional questions concluded final judicial review by CAAF, the nation's highest military court.

54, 60 (Fed Cl. 2002) (holding that if a claim is not ripe for review, the court lacks subject matter jurisdiction to adjudicate the dispute).

2. The Eastern District of Virginia Complaint Is Further Evidence That The Government Was Concealing The Documented Adjudicated UCMJ Article 138 Complaint.

The defendant attaches an unsworn *pro se* complaint that plaintiff filed on 23 May 1994 in the United States District Court for the Eastern District of Virginia against the Navy and several of its officers[8] for the proposition that plaintiff could have sought relief back in 1994 for which he seeks relief in this Honorable Court. Defendant is wrong.

First, that complaint, which alleged violations of the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 *et seq*.[9] and 42 U.S.C. §§ 1983 and 1985, had been superceded by an amended complaint filed on 20 June 1994 alleging only claims under 12 U.S.C. §§ 3401 *et seq*. (See U.S. District Court for the Eastern District of Virginia PACER civil docket of *MacLean v. U.S Navy* located at: http://pacer.vaed.uscourts.gov/dc/cgi-bin/pacer250.pl?puid=01084734838

Second, a review of the 1994 complaint demonstrates that plaintiff was not seeking review of his court-martial conviction nor did he request military back pay. At

[8] The Naval officers and employees were voluntarily dismissed by plaintiff on 20 June 1994 pursuant to Rule 41(a) of the Federal Rules of Civil Procedures. When an action is voluntarily dismissed it is as if it never existed. *Bonneville Assoc. Ltd P'ship v. Barrum*, 165 F.3d 1360, 1364 (Fed. Cir. 1999) ("The rule in the federal courts is that '[t]he effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) 'is to render the proceedings a nullity and leave the parties as if the action had never been brought.'")

[9] In 1992, the Navy issued illegal general court-martial subpoenas to several financial institutions, which violated the plaintiff's right to financial privacy because it failed to give notice to plaintiff and/or his attorneys thereby preventing plaintiff from obtaining injunctive relief. (Complaint at ¶ 28; footnote 8.) *See generally* 12 U.S.C. §§ 3401 *et seq*. There is a $100.00 statutory civil penalty for violating an individual's right to financial privacy. 12 U.S.C. § 3417. On or about 25 July 1994, the Navy settled the Eastern District of Virginia action and paid plaintiff the sum of $1,000.00 with respect to violations of the Right to Financial Privacy Act.

the time of the original 1994 Eastern District of Virginia complaint, plaintiff's direct appeal under 10 U.S.C. § 866(c) of his general court-martial was still pending before the formerly named United States Navy-Marine Corps Court of Military Review ("NMCMR"), which was renamed NMCCA. Also, assuming, *arguendo*, that plaintiff had the concealed evidence at this time, which he did not, any claims in a civilian court would not have been ripe for civilian judicial review because the military courts had not yet had the "opportunity to rule on the asserted claims presented . . ." *Cooper v. United States*, 807 F.2d 988, 911 (Fed. Cir. 1986).

Third, defendant's allegation that plaintiff acknowledged the results of his Article 138 (10 U.S.C. § 938) Complaint in 1994 by stating in the 1994 Eastern District of Virginia complaint "[t]he Secretary of the Navy in the Spring of 1993 ruled in part on behalf of the plaintiff," is without merit. (Government's Motion to Dismiss at page 5) As indicated in the Complaint, plaintiff believed that his Article 138 Complaint had merit. (*See* Complaint at footnote 10.) However, plaintiff and his military and civilian attorneys had no documentation to substantiate the belief. As indicated above, the defense in plaintiff's 10 U.S.C. § 866(c) direct review did file a motion in 1994 to compel the Government to produce documents, but NMCMR denied the motion on 23 March 1994. (*Id*.) The Government fails to dispute this allegation in its moving papers. The final adjudication of the Complaint is not apart of plaintiff's Naval service record. (Complaint at ¶ 15). The Government fails to dispute this allegation as well.

Fourth, the concealed document now shows that it was *not* the Secretary of the Navy that upheld the Article 138 (10 U.S.C. § 938) Complaint, but that it was the Acting Assistant Secretary of the Navy for Manpower and Reserve Affairs. Additionally, the

1994 Eastern District of Virginia complaint does not give the exact date of the final adjudication. Rather, it just states "Spring of 1993." (Government's Motion to Dismiss at page 5.) The previously concealed document is actually dated 4 May 1993. (Complaint at ¶ 25; Exhibit "S" to Complaint) Finally, the 1994 Eastern District of Virginia complaint alleges, based on belief, the Secretary of the Navy "ruled in part on behalf of plaintiff. . ." However, the previously concealed document now shows the Acting Assistant Secretary of the Navy for Manpower and Reserve Affairs didn't just rule in part, but upheld plaintiff's complaint and reinstatement to Petty Officer Third Class nine days after his general court-martial. (Exhibits S, R to Complaint) Each of the above is further evidence that the Government was in fact concealing the very document necessary to establish that the SPCMCA had an "other-than-official" interest in plaintiff's court-martial.

Accordingly, the concealed document showing the adjudicated UCMJ Article 138 Complaint was highly relevant to plaintiff's significant constitutional claims of deprivation of due process in the creation of the general court-martial. Without the concealed document, plaintiff's appellate defense counsel had to tailor his direct appeal, 10 U.S.C. § 866(c), arguments to one of unlawful command influence as opposed to the argument which is now being presented – that there was a fatal jurisdictional defect in the creation of the court-martial rising to a level of deprivation of due process.

3. <u>A Pattern Exists of the Government Concealing Relevant And/Or Critical Documents In Plaintiff's Court-Martial Case.</u>

The Government has had a track record of playing hide-the-ball with relevant documents in plaintiff's court-martial case for over a decade. On 17 August 1992, at a UCMJ Article 39(a) session, 10 U.S.C. § 839(a), plaintiff's military defense attorneys

moved the court-martial to compel the Government to produce illegal general court-martial subpoenas that the Government had issued prior to the convening of a general court-martial which had enabled the Government to illegally enter the plaintiff's private financial records. Military Judge Lieutenant Colonel M. N. Guerrero, U.S. Marine Corps, ordered the Government to find copies of the subpoenas and turn them over to the defense.

> M[ilitary] J[udge]: If somebody's bank records were improperly entered, which is what it appears to me, the defense might later be questioning, I'm not sure you're right government.

*See* Court-Martial Transcript of UCMJ article 39(a) session attached hereto and marked as Exhibit "A" at page 19.

> MJ: We're currently set for trial on the 19th, which is Wednesday morning at 0800 here at N[aval] D[istrict] W[ashington]. I expect the government, the minute I close this 39(a) session . . . to get the subpoenas - - copies of any subpoenas which were used . . . I would like a status report about 1400 this afternoon.

*Id*. at page 19. However, the Government could not locate *any* of the illegal subpoenas issued.

> MJ: Sorry. Secondly, that the government cannot find copies of any subpoenas sent to the banks, but the government is willing to stipulate with the defense that subpoenas were sent.

*Id*. at page 20.

Not until after the plaintiff's court-martial concluded and federal civil suits were filed under 12 U.S.C. §§ 3401 *et seq*. against several of the plaintiff's financial institutions and credit card holders did copies of the illegal subpoenas surface and were placed under court-ordered seal in *MacLean v. Riggs National Bank, et al.*, civil action number 94-259, U.S. District Court for the District of Columbia. On 16 February 1994,

*The Washington Post* published a front page article on its business section entitled "Area Banks Taken To Court Over Role In A Navy Probe" regarding plaintiff's civil suit against the banks. (See computer printed article retrieved from *The Washington Post's* online archives and attached hereto and marked as Exhibit "B.") *The Washington Post* even reported that **"the case is full of mysteries."**

After the U.S. Navy-Marine Corps Court of Criminal Appeals issued its order to show cause against the Government on 28 July 2003 [Complaint at Exhibit "A"], U.S. District Judge John D. Bates ordered the illegal subpoenas unsealed[10] in *MacLean v. Riggs National Bank, et al*., civil action number 94-259, U.S. District Court for the District of Columbia. (*See* U.S. District Court order dated 7 August 2003; Response of Amicus Curiae United States Attorney's Office to Order to Show Cause; and Navy General Court-martial subpoenas attached hereto and marked as Exhibit "C.")

As alleged in the Complaint, the plaintiff's former commanding officer, Commander Robert W. Cosgriff, was also the special court-martial convening authority who made a recommendation that the plaintiff be general court-martialed pursuant to Rules for Courts-Martial 401(c)(2)(A) over the contrary advice of the impartial investigating officer under UCMJ article 32, 10 U.S.C. § 832. (Complaint at ¶ ¶ 23, 24.) The R.C.M. 401(c)(2)(A) recommendation is **missing** from the record-of-trial. (Complaint at ¶ 24.) In a Federal Freedom of Information Act ("FOIA") case filed against the U.S. Navy last year in the U.S. District Court for the Southern District of California, the responsible officer for the Navy that handles original court-martial records stated that the Navy was unable to locate the missing document. (Complaint at ¶ 24; *See*

[10] The late U.S. District Judge Charles B. Richey had ordered the illegal general court-martial subpoenas sealed.

*also* Lieutenant Commander ("LCDR") Myles Brooks Declaration dated 24 July 2003 attached hereto and marked as Exhibit "D"; LCDR Brooks Declaration dated 26 August 2003 attached hereto and marked as Exhibit "E") Notwithstanding the FOIA case, Congresswoman Susan Davis submitted a Congressional Inquiry to obtain the missing document and further the NMCCA granted a motion to compel the production of the missing document. (Complaint at ¶ 24.) Those attempts also failed. (*Id*.) The plaintiff and this Honorable Court do not know the precise contents of the R.C.M. 401(c)(2)(A) recommendation for general court-martial. However, this Court does know that an impartial investigating officer, 10 U.S.C. § 832, found that reasonable grounds did not exist to believe plaintiff committed the offenses alleged. (Complaint at ¶ 23.)

Accordingly, the Government has had a consistent track record of concealing or failing to locate relevant, critical documents, despite judges ordering documents to be found or motions to compel being granted; as well congressional inquiries to obtain missing documents and FOIA lawsuits to compel production.

4. Collateral Attack of A Court-Martial Conviction In A Civilian Court Must First Meet The Prerequisite of Military Judicial Exhaustion Prior to Filing A Claim Under the Tucker Act.

Defendant's reliance upon *Holloway v. United States*, 60 Fed. Cl. 254 (Fed.Cl. 2004) is misplaced. The plaintiff in *Holloway*, Captain Sally B. Holloway, was not court-martialed. (*Id*.) The plaintiff in this instant case was illegally court-martialed and his constitutional due process rights were violated. (*See generally* Complaint.) In *Holloway*, Navy Captain Holloway brought a suit alleging she was unlawfully discharged from the United States Naval Reserve with an honorable discharge because the Navy would not

place Captain Holloway in early retirement under the Navy's Temporary Early Retirement Authority ("TERA"). (*Holloway*, *supra* at 257.) Plaintiff in this case was sentenced by the general court-martial to be dishonorably discharged from Naval service. (Complaint at ¶ 11.)

On 16 September 1993, plaintiff's dishonorable discharge was upgraded *sua sponte* by the Navy Parole and Clemency Board to a bad conduct discharge ("BCD"). (Complaint at ¶ 13.) A BCD is still punitive. "A punitive discharge will place limitations on employment opportunities and will deny the accused other advantages which are enjoyed by one whose discharge characterization indicates that he has served honorably. A punitive discharge will affect an accused's future with regard to his legal rights, economic opportunities, and social acceptability . . . [a bad conduct discharge] deprives one of substantially all benefits administered by the Department of Veterans Affairs . . ." *U.S. v. Rasnick*, 58 M.J. 9 (CAAF 2003). Because Captain Holloway was not punitively discharged from Naval service pursuant to a court-martial, she was not required to first exhaust military judicial remedies nor was she required to exhaust permissible administrative remedies. *Holloway*, *supra*, at 256; *Richey v. United States*, 322 F.3d 1317, 1325 (Fed. Cir. 2003) (holding correction boards have been regarded as a permissive administrative remedy and that an application to a correction board is therefore not a mandatory prerequisite to filing a Tucker Act suit challenging discharge).

In this case, plaintiff was first required to exhaust military judicial remedies because he is collaterally attacking a general court-martial conviction in a civilian court. *Schlesinger v. Counselman*, 420 U.S. 738, 758 (1975). The requirement of exhaustion of military judicial remedies applies for any allegation of a violation of the Constitution,

statutes, or military regulations. *Williams v. Secretary of the Navy,* 787 F.2d 552 (Fed. Cir. 1986). A plaintiff must give the military courts an opportunity to rule on the asserted claims presented before a civilian court. *Cooper v. United States*, 807 F.2d 988, 911 (Fed. Cir. 1986).

Defendant's reliance on *Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003) (*en banc*), *certiorari denied* 124 S.Ct. 1404 (2004) is also misplaced, as *Martinez* is distinguishable from the instant case. Army Captain Martinez was not court-martialed. Rather, he was subjected to *non-judicial* punishment under UCMJ Article 15 (10 U.S.C. § 815); and an Army Elimination Board was convened recommending that Captain Martinez be retained in the Army Reserve because the allegations that formed the basis for the UCMJ Article 15 proceeding were not true. *Martinez* at 1299. By contrast, plaintiff in the instant case was convicted by general court-martial, which is judicial, and sentenced to, *inter alia*, a punitive discharge. (Complaint at ¶ 11.)

Captain Martinez filed a petition with the Army Board for Correction of Military Records to expunge his Army service record of the UCMJ Article 15 proceeding. *Martinez* at 1299 – 1300. The Board denied his petition and subsequent request for reconsideration. (*Id.*) In the instant case, because plaintiff was convicted by general court-martial the Board of Corrections of Naval Records lacks the statutory authority to either set aside or vacate a general court-martial. 10 U.S.C. § 1552(f). Indeed plaintiff pleaded this fact in his Complaint (Complaint at ¶ 10).

Additionally, unlike the *Martinez* case, plaintiff in the instant case had to first exhaust all available military judicial remedies. *Schlesinger v. Counselman, supra,* 420 U.S. at 758; *Williams v. Secretary of the Navy, supra*, 787 F.2d 552. In *Martinez,*

Captain Martinez was not convicted by court-martial, and given a punitive discharge; he therefore was not required to first exhaust military judicial remedies because the military appellate courts lacked the jurisdiction to review UCMJ Article 15 proceedings. (10 U.S.C. §§ 815(e), 866, 867). Further, Captain Martinez was not required to first exhaust permissible administrative remedies with the Army Board for Correction of Military Records as a prerequisite to filing suit in U.S. Court of Federal Claims. *Richey v. United States*, *supra*, 322 F.3d at 1325.

In this case, plaintiff has alleged and proved by a preponderance of evidence that the Government concealed critical documented evidence, which prevented all events required for plaintiff to have brought this action at an earlier time. (Complaint at ¶ 25; Exhibit "T", "U" to Complaint) *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) (equitable tolling due to defendant's fraudulent concealment "is read into every federal statute of limitation"); *Welker v. U.S.*, 752 F.2d 1577, 1580 (Fed. Cir. 1985); *Hopland Band of Pomo Indians v. U.S.*, 855 F.2d 1573, 1577 (Fed. Cir. 1988); *Alliance Descendants of Texas Land Grants v. U.S.*, 37 F.3d 1478, 1482 (Fed. Cir. 1994) (holding that statute of limitations may be tolled even in suits against the Government) The facts in *Martinez* are not analogous to the facts of this case and therefore simply do not apply to the case at bar.

The defendant cites *Barney v. United States*, 57 Fed. Cl. 76 (Fed. Cl. 2003) for the proposition that plaintiff in this case need not know the extent of his injuries for a claim to accrue; instead, accrual occurs when "a plaintiff is on [notice] that it has a potential claim." (Defendant's Motion to Dismiss at page 4) *Barney* is also distinguishable from this case. In *Barney*, Airman Barney, was honorably discharged from the U.S. Air Force

and sought to have the honorable discharge changed to medical discharge with retro-active retirement. *Barney* at 78. Once again, plaintiff in this case was discharged from Naval service with a punitive discharge as a result of an illegal court-martial which violated plaintiff's due process rights. (*See generally* Complaint). Plaintiff has pleaded that the Government withheld crucial evidence from his attorneys which prevented him from raising his claims at an earlier time. (Complaint at ¶ ¶ 3, 4, 25) Plaintiff has also provided declarations from both the detailed assistant defense trial counsel, former JAG LT Nielsen, and the detailed military appellate defense counsel, LTCOL Hammond, substantiating and corroborating that the defense in plaintiff's 1994 court-martial was never provided with the documented final adjudication of the UCMJ Article 138 Complaint showing it had merit. (Exhibit "T"; "U" to Complaint.) The Government in its moving papers has failed to provide any evidence to dispute the sworn declarations of former JAG LT Nielsen and LTCOL Hammond.

Thus, plaintiff was unable to invoke this Honorable Court's jurisdiction until he exhausted all available military judicial remedies, which was on 9 February 2004 when CAAF denied the writ-appeal of the seven page NMCCA opinion of 23 December 2003, which denied plaintiff's petition. Additionally, plaintiff was unable to invoke this Honorable Court's jurisdiction on any claims of back pay pursuant to the Tucker Act or Fifth Amendment Constitutional claims as a result of the general court-martial sentence when the Eastern District of Virginia complaint was filed in 1994, in relation to violations of the Right to Financial Privacy Act because when that action was filed on 23 May 1994, the formerly named NMCMR was still considering the direct appeal under 10 U.S.C. § 866(c) and the critical documented evidence had not yet been disclosed. The

significant constitutional claims raised before this Honorable in this action did not conclude military judicial review until 9 February 2004. (Complaint at ¶ 9)

Defendant relies upon *Hoffman v. United States*, 894 F.2d 380, 385 (Fed. Cir. 1990); and *Inland Service Corp. v. United States*, 231 Ct.Cl. 974 (1982) for the proposition of claiming a presumption of regularity ascribed to the conduct of Government officials in the course of their duties in sending the final adjudication of the UCMJ article 138 (10 U.S.C. § 938) complaint to the wrong command. The defendant, however, fails to dispute the allegation that it had an affirmative duty under Navy Judge Advocate General Manual ("JAGMAN") § 0310(d) [11] to give final notification to the plaintiff of the Acting Assistant Secretary of the Navy's decision on the UCMJ Article 138. Indeed, a retired Marine Corps officer and a former Navy JAG officer provided declarations that they were never provided with any final adjudication of the UCMJ article 138 Complaint during either the trial of the court-martial or on direct appeal. In fact, LTCOL Hammond indicated in his declaration that in his arguments before NMCMR on direct appeal under 10 U.S.C. § 866(c), he tailored his arguments to one of "unlawful command influence" by Commander Robert W. Cosgriff [12] because at no time

[11] Government officials sending the Assistant Secretary of the Navy's letter dated 4 May 1993 to a wrong command where plaintiff was not assigned does not constitute notice under JAGMAN 0310(d). The Assistant Secretary of the Navy's letter showed plaintiff's UCMJ article 138 complaint against the special court-martial convening authority that recommended general court-martial in the case of plaintiff had merit and was correct in law and true in fact. This evidence was not provided to the plaintiff or his military and civilian attorneys until 2002. (Complaint at ¶ 25.) Retired LTCOL Hammond and former JAG LT Nielsen's declaration substantiate and corroborate this fact. (Complaint at ¶ 25; Exhibits T, U to Complaint.) The Government fails to dispute these officers' declarations.

[12] Commander Cosgriff was the special court-martial convening authority that preferred charges; appointed an investigating officer to investigate the plaintiff under 10 U.S.C. § 832; and contrary to the investigating officer's findings that reasonable grounds did not exist to believe the plaintiff committed the offenses alleged, wrote a recommendation for general court-martial under Rules of Courts-Martial 401(c)(2)(A). (Complaint at ¶ ¶ 23, 24)

during the direct appeal in plaintiff's case did the appellate defense know the 10 U.S.C. § 938 Complaint had merit. (LTCOL Hammond Declaration at ¶ 2 – 4.)

Most compelling is the caption of the 1994 direct appeal under 10 U.S.C. § 866(c) in NMCMR, now named NMCCA, which clearly shows the plaintiff with the rank of "Cryptologic Technician (Administrative) Seamen (E-3)" instead of the rank in which he was reinstated to Petty Officer Third Class – Cryptologic Technician (Administrative) Third Class (E-4). (Exhibit "D" to Complaint) If the Government was not truly concealing the documented evidence that plaintiff's UCMJ Article 138 Complaint had merit and he was reinstated nine-days after his general court-martial to Petty Officer Third Class, why then on every pleading and order filed in NMCMR (now named NMCCA) did it indicate plaintiff held the rank of Seamen (E-3) as opposed to Petty Officer Third Class (E-4)? The answer is quite simple: The Government was concealing the documented evidence that proved plaintiff's UCMJ article 138 Complaint had merit and he was reinstated to a Petty Officer.

The bottom line is it is undisputed that the Government concealed critical evidence which would have supported raising the allegations in the Complaint at a sooner time. While plaintiff was discharged from active Naval service on 29 August 1994, all events did not occur to fix the Government's liability until it released the final documented adjudication of the UCMJ Article 138 Complaint in 2002. Upon the Government releasing the final adjudication of the UCMJ Article 138 Complaint, the claims raised in this action did not conclude military judicial review until 9 February 2004. As such, the statute of limitations should be equitably tolled.

### C. Denying Equitable Tolling In The Collateral Attack Of Court-Martial Convictions With Respect To Exhausted Military Petitions For Extraordinary Relief Would Deny Article III Judicial Review of Significant Constitutional Deprivations Alleged In Courts-Martial

Military courts are Article I courts. (Article I, § 8, Clause 14, U.S. Constitution; 10 U.S.C. §§ 820, 822, 823) As alleged in the Complaint, plaintiff is precluded from direct Article III, U.S. Constitution, Supreme Court review by virtue of Article III, § 2, Clause 2 of the U.S. Constitution and 28 U.S.C. § 1259(4) because CAAF did not grant plaintiff the relief he sought. (Complaint at ¶ ¶ 9, 21.) In 1983, Congress enacted 28 U.S.C. § 1259, which permits military service members convicted by court-martial to petition the Supreme Court for a writ of *certiorari* in limited circumstances. *See* Military Justice Act of 1983, Pub.L.No. 98-209, 97 Stat. 1393, 1406.

Because plaintiff's case is not a death penalty case, 28 U.S.C. § 1259(1) does not apply. The Judge Advocate General of the Navy has not certified the case for review in CAAF and therefore 28 U.S.C. § 1259(2) does not apply. Finally, CAAF did not grant review of a petition for review under 10 U.S.C. § 867(a)(3) and therefore 28 U.S.C. § 1259(3) does not apply to plaintiff's case. Since plaintiff filed a writ-appeal petition for review of the NMCCA seven page opinion denying the petition for extraordinary relief in the nature of a writ of error *coram nobis* and was not granted relief by CAAF, he is precluded from filing a petition for *certiorari* to the Supreme Court. 28 U.S.C. § 1259(4).[13] If plaintiff had been granted relief in CAAF, the Government could have filed

[13] The language of 28 U.S.C. § 1259(4) is skewed in favor of the Government. The losing service member who is not granted relief has no right to Supreme Court review. However, if the Government loses an extraordinary writ case, it has a right to Supreme Court review. Based upon information and belief the Armed Services Committee of the U.S. House of Representatives has requested the Department of Defense General Counsel to issue an opinion on the current state of the law.

a petition for *certiorari* to the Supreme Court. Currently there is a gross inequity in the law. (Id.) This inequity is demonstrated in *Clinton v. Goldsmith*, 526 U.S. 529 (1999). In *Clinton*, Air Force Major Goldsmith had been granted relief in a petition for extraordinary relief by CAAF in a 3-2 decision. The Government filed a petition for *certiorari*, under 28 U.S.C. § 1259(4) and the Supreme Court reversed CAAF. Had Major Goldsmith lost before CAAF, he would not have been entitled to Article III review by the Supreme Court.

The Federal Circuit has recognized that United States Court of Military Appeals ("CMA"), now renamed CAAF, "holds the key that allows access to the Supreme Court." *Matias v. United States*, 923 F.2d 821, 824 (Fed. Cir. 1990). In this action plaintiff has alleged that CAAF denied his writ-appeal and failed to fully and fairly consider the significant constitutional questions raised by plaintiff. (Complaint at ¶ 5) As such CAAF did not afford plaintiff the key, under 28 U.S.C. § 1259(4), that allows access to the Supreme Court, thereby denying plaintiff Article III review. This Honorable Court has the jurisdiction to collateral review the court-martial. *Bowling v. United States*, 713 F.2d 1558, 1560-61 (Fed. Cir. 1983). For nearly a decade, the Government concealed critical evidence from plaintiff's civilian and military attorneys at trial and on direct appeal (Complaint at ¶ 25; Declaration of LCOL Hammond; Declaration of LT Nielsen). If it were not for the concealment of this critical evidence, plaintiff's attorneys could have raised the significant constitutional questions at an earlier time. To now bar this action, by not tolling the statute of limitations or setting the date of accrual to the time the concealed document was released, would deny plaintiff the key to Article III review on the merits of the significant constitutional questions raised. In future court-martial cases

the Government could simply conceal evidence and wait for the six year statute of limitations to expire and then disclose the evidence. A military service member would then have no recourse in any Article III court should the service member fail to prevail in the military judicial system. This gross inequity must not be tolerated.

While this Honorable Court is also an Article I court,[14] decisions of this Honorable Court are subject to review in the United States Court of Appeals for the Federal Circuit and ultimately the Supreme Court of the United States, which are Article III courts. This Honorable Court, in its collateral review of a court-martial under the terms of the Tucker Act and the Fifth Amendment's Due Process Clause, holds the key to Article III review on the merits of the significant constitutional questions raised by plaintiff in this action, which have thus far evaded full and fair judicial review.

## III. CONCLUSION

This Honorable Court's jurisdiction is well pleaded in the Complaint. It is undisputed that the favorable adjudicated UCMJ Article 138 Complaint was concealed from plaintiff and his military and civilian attorneys until 2002. As a result of the concealment of this critical evidence, the significant constitutional questions now being raised could not have been brought before this Honorable Court at an earlier date. Since the time plaintiff's military attorneys obtained the critical documented evidence, both

[14] The U.S. Court of Federal Claims was created pursuant to Article I of the U.S. Constitution in October 1982 pursuant to the Federal Courts Improvements Act of 1982. From 1 October 1982 until 28 October 1992 the Court was named the United States Claims Court. The Court's name was changed as part of the Federal Court Administration Act of 1992, Pub. L. No. 102-572, 106 Stat. 4506 (1992)

civilian and military counsel have been diligent in exhausting plaintiff's military judicial remedies prior to filing the instant action. Thus, the statute of limitations should either be equitably tolled or accrue on the date on which the critical document was released from concealment and military judicial remedies were exhausted.

Accordingly, this Honorable Court should deny the defendant's motion to dismiss.

Dated: June 18, 2004

Respectfully submitted,

HELLER EHRMAN WHITE & McAULIFFE LLP

By ___s/Daniel S. Silverman___________

DANIEL S. SILVERMAN, ESQ.
HELLER EHRMAN WHITE & McAULIFFE LLP
4350 La Jolla Village Drive, 7th Fl.
San Diego, CA 92122-1246
Telephone: (858) 450-8400
Facsimile: (858) 450-8499

*Attorneys for Plaintiff*
*NORBERT BASIL MACLEAN III*

## Table of Contents

**Page**


I. PRELIMINARY STATEMENT ........ 1

II. ARGUMENTS ........ 2

A. Standard of Review for Motions to Dismiss Under Rule 12(b)(6), Federal Rules of U.S. Court of Federal Claims ........ 2

B. Concealment Of Documentary Evidence In Cases Which Collaterally Attack A Court-Martial Conviction Tolls The Tucker Act's Six-Year Statute Of Limitations Or, In The Alternative, The Date On Which To File A Claim Accrues On The Date Of Exhaustion Of Military Judicial Remedies ........ 3

1. The Concealed Documented Adjudicated UCMJ Article 138 Complaint Against The Special Court-Martial Convening Authority Was Highly Relevant To Establish Claims of: (1) The Special Court Martial Convening Authority Had An Other Than Official Interest In Plaintiff's Prosecution; and (2) A Fatal Jurisdictional Defect In The Creation Of The Court-Martial Rising To A Level Of Deprivation of Due Process........ 4

2. The Eastern District of Virginia Complaint Is Further Evidence That The Government Was Concealing The Documented Adjudicated UCMJ Article 138 Complaint. ........ 8

3. A Pattern Exists of the Government Concealing Relevant And/Or Critical Documents In Plaintiff's Court-Martial Case........ 10

4. Collateral Attack of A Court-Martial Conviction In A Civilian Court Must First Meet The Prerequisite of Military Judicial Exhaustion Prior to Filing A Claim Under the Tucker Act. ........ 13

C. Denying Equitable Tolling In The Collateral Attack Of Court-Martial Convictions With Respect To Exhausted Military Petitions For Extraordinary Relief Would Deny Article III Judicial Review of Significant Constitutional Deprivations Alleged In Courts-Martial........ 20

III. CONCLUSION ........ 22

Court Martial Transcript of Article 39(a) Session ........ Exhibit A

February 16, 1994 Washington Post Article ........ Exhibit B

U.S. District Court order dated 7 August 2003; Response of Amicus Curiae United States Attorney's Office to Order to Show Cause; and Navy General Court-martial subpoenas ........ Exhibit C

July 24, 2003 Declaration of Lt. Commander Myles Brooks, USN........ Exhibit D

August 26, 2003 Declaration of Lt. Commander Myles Brooks, USN ........ Exhibit E

## Table of Authorities

**Cases** **Page**

*Ainslie v. United States*
355 F.3d 1371 (Fed. Cir. 2004)........................................................................4
*Barney v. United States*
57 Fed. Cl. 76 (Fed. Cl. 2003) .......................................................................19
*Beekwilder v. United States*
55 Fed.Cl. 54 (Fed Cl. 2002) ...........................................................................9
*Bonneville Assoc. Ltd P'ship v. Barrum*
165 F.3d 1360 (Fed. Cir. 1999).......................................................................10
*Bowling v. United States*
713 F.2d 1558, 1560-61 (Fed. Cir. 1983).........................................................25
*Clinton v. Goldsmith*
526 U.S. 529 (1999) ........................................................................................24
*Cooper v. United States*
807 F.2d 988 (Fed. Cir. 1986) ....................................................................11, 17
*Davis v. Monroe County Bd. Of Educ.*
526 U.S. 629 (1999) .......................................................................................4, 15
*Garret v. Lowe*
39 M.J. 293, 295 (CMA 1994)...........................................................................9
*Griffith v. Kentucky*, 479 U.S. 314, 322-28(1987) ...............................................9
*Hoffman v. United States*
894 F.2d 380 (Fed. Cir. 1990) ........................................................................21
*Holloway v. United States*
60 Fed. Cl. 254 (Fed.Cl. 2004) ...................................................................16, 17
*Holmberg v. Armbrecht*
327 U.S. 392, 397 (1946) ................................................................................19
*MacLean v. Riggs National Bank, et al.*
Civil action number 94-259, U.S. District Court for the District of Columbia ............14
*MacLean v. U.S Navy* located at
http://pacer.vaed.uscourts.gov/dc/cgi-bin/pacer250.pl?puid=01084734838............ 1, 14
*MacLean v. U.S Navy* located at: http://pacer.vaed.uscourts.gov/dc/cgi-bin/pacer250.pl?puid=01084734838.......................................................10
*Martinez v. United States*
333 F.3d 1295 (Fed. Cir. 2003)................................................................. 17, 18, 19
*Matias v. United States*
923 F.2d 821, 824 (Fed. Cir. 1990).................................................................24
*Mudge v. U.S.*
59 Fed. Cl. 527 (Fed. Cl. 2004) ........................................................................8
*Pi Elecs. Corp v. United States*
55 Fed.Cl. 279 (Fed Cl. 2003) ...........................................................................4
*Richey v. United States*
322 F.3d 1317 (Fed. Cir. 2003)....................................................................17, 19
*Schlesinger v. Counselman*
420 U.S. 738 (1975) ....................................................................................17, 18

*Steel Co. v. Citizens for a Better Env't.*
523 U.S. 83 (1998) .......... 3
*Summers Oil Col. V. United States*
241 F.3d 1375 (Fed. Cir. 2001) .......... 4
*Teague v. Lane*
489 U.S. 288, 305-08 (1989) .......... 9
*U.S. v. Rasnick*
58 M.J. 9 (CAAF 2003) .......... 16
*Welker v. U.S.*
752 F.2d 1577 (Fed. Cir. 1985) .......... 19
*Williams v. Secretary of the Navy*
787 F.2d 552 .......... 1, 17, 18

**Statutes**

10 U.S.C. § 832 .......... 7, 15, 22
10 U.S.C. § 866(c) .......... passim
10 U.S.C. § 867(a)(3) .......... 24
10 U.S.C. §§ 820 .......... 23
10 U.S.C. 866(c) .......... 6
12 U.S.C. § 3417 .......... 10
12 U.S.C. §§ 3401 .......... 10
12(b)(6) of the Rules of the United States Court of Federal Claims .......... 1, 3
28 U.S.C. § 1259(2) .......... 23
28 United States Code ("U.S.C.") § 2501 .......... 1
Article 138 (10 U.S.C. § 938) .......... 5, 11, 21
Article III, § 2, Clause 2 of the U.S. Constitution .......... 23
Article III, U.S. Constitution .......... 23
Federal Courts Improvements Act of 1982 .......... 25
Fifth Amendment to the U.S. Constitution .......... passim
First Amendment to the U.S. Constitution .......... 5
Military Justice Act of 1983
Pub.L.No. 98-209, 97 Stat. 1393, 1406 .......... 23
R.C.M. 401(c)(2)(A) .......... 15
Right to Financial Privacy Act, 12 U.S.C. §§ 3401 .......... 10, 13
Rules of Courts-Martial 401(c)(2)(A) .......... 7, 15, 22
Tucker Act, 28 U.S.C. § 1491(a)(1) .......... passim
Uniform Code of Military Justice .......... passim

**Other Authorities**

1 Calvin W. Corman, *Limitation of Actions* § 6.1, at 373-75 (1991) .......... 8
*Area Banks Taken To Court Over Role In A Navy Probe*
Washington Post .......... 14

DANIEL S. SILVERMAN (Bar No. 137864)
HELLER EHRMAN WHITE & McAULIFFE LLP
4350 La Jolla Village Dr., 7th Floor
San Diego, California 92122-1246
Tel: (858) 450-8400
Fax: (858) 450-8499

Attorneys for Petitioner
NORBERT BASIL MacLEAN III

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| NORBERT BASIL MacLEAN III,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | Case No. 04-0448-C<br><br>PROOF OF SERVICE<br><br>Judge: Hon. Mary Ellen Coster Williams |

I, Mary F. Shea, declare that I am over the age of eighteen years and I am not a party to this action. I am employed by Heller Ehrman White & McAuliffe LLP, attorneys of record for Plaintiff NORBERT BASIL MacLEAN III. My business address is 4350 La Jolla Village Drive, 7th Floor, San Diego, California 92122. On June 18, 2004 I served the document(s) listed below on the interested parties in this action in the manner indicated below:

**Document(s) Served**:

**Plaintiff's Response to Defendant's Motion to Dismiss; Memorandum of Points & Authorities in Support Thereof.**

**Parties Served**:

Peter D. Keisler, Esq.
David M. Cohen, Director
James Kinsella, Deputy Director
Gerald M. Alexander, Trial Attorney
Commercial Litigation Branch - Civil Div.
U.S. Department of Justice
1100 L Street, NW 8th Floor
Washington, DC 20530

Lt. Col. James K. Carberry
Department of the Navy
Office of the Judge Advocate General
General Litigation Division
1322 Patterson Avenue, SE Suite 3000
Washington Navy Yard, DC 20374

**Manner of Service:**

[ ] **BY MAIL**: I am readily familiar with the business practice for collection and processing correspondence for mailing with the United States Postal Service. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelopes were sealed, and with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at San Diego, California. I caused the document(s) to be sent by mail via United States Postal Service to the party(ies) identified above.

[ x ] **BY OVERNIGHT DELIVERY**: I caused the document(s) identified above to be delivered to the above party(ies) via next business day delivery by FED-EX overnight delivery service.

[ ] **BY FACSIMILE**: I caused the document(s) to be sent via facsimile to the parties identified above. The facsimile machine I used complied with California Rules of Court, Rule 2003(3), the transmission was reported as complete, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2005, I caused the machine to print a transmission record of the transmission.

[X ] **BY ELECTRONIC FILING** I caused the document(s) to be sent via electronic filing in accordance with The United States Court of Federal Claims General Order No. 2003-42 Procedures for Electronic Case Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct; that this declaration is executed on June 18, 2004, at San Diego, California; and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

s/Mary F. Shea
Mary F. Shea