**EXHIBIT A**

PERSONS PRESENT

| | |
|---|---|
| MILITARY JUDGE: | LTCOL M. N. GUERRERO, USMC |
| TRIAL COUNSEL: | LT WILLIAM SPRANCE, JAGC, USNR |
| ASS'T TRIAL COUNSEL: | LT BRIAN RIPPEL, JAGC, USNR |
| DEFENSE COUNSEL: | LCDR WILLIAM C. LITTLE, JAGC, USN |
| ACCUSED: | CTASN NORBERT B . MACLEAN, III, USN |
| REPORTER: | MS. CAROL ROSS, CIVILIAN |

PERSONS ABSENT

MEMBERS.

MJ: This Article 39(a) session is called to order in the case of Cryptologic Technician Administration Seaman Norbert B. MacLean, United States Navy, of Naval Security Station, Washington, DC.

TC: This court is convened by R. C. Jones, Commandant, Naval District Washington, by general court-martial convening order 6G-92 dated 06 August 1992, a copy of which has been furnished the military judge, counsel, the accused, and the reporter for insertion into the record. The charges were preferred by Senior Chief Michael Shaffer, sworn to before an officer authorized to administer oaths, and have been properly referred to this court-martial by the Commandant, Naval District Washington. These charges were served on the accused on 07 August.

MJ: Now, counsel, we had some additional preferrals. Are you going to list them, since they were sworn to before different people.

TC: Yes, ma'am. I was going to say, furthermore, there was an Additional Charge II that had been preferred by Lieutenant John S. Jenkins, JAG Corps, United States Navy, was sworn to before an officer authorized to administer oaths, and were properly referred to this court-martial. It was served on the accused on 10 August 1992. Ma'am, but that charge has been withdrawn.

MJ: What is now Additional Charge II was preferred on the 15th of June, is that the case?

TC: Yes, ma'am, if I could explain. I made an error originally with numbering the charges. There were two additional charge II's. The second additional charge had been preferred on 07 August 1992. That is the charge that has been with--that is the charge that has been withdrawn. The original Additional Charge II has been dismissed.



PAGE 3/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

MJ: What's been dismissed?

TC: There were two Additional Charge II's in this case, ma'am. The first Additional Charge II has been dismissed. The second Additional Charge II, which I numbered incorrectly, has been withdrawn.

MJ: All I really wanted to get on the record is what is now Additional Charge II was preferred on 15 June 1992, is that correct?

TC: Yes, ma'am.

MJ: And it was referred along with the other charges on the 6th of August?

TC: Yes, ma'am.

MJ: Are you, in fact, Cryptologic Technician Administration Seaman Norbert B. MacLean, United States Navy, the accused in this case?

ACC: Yes, ma'am.

MJ: Thank you. Please be seated.

TC: The general nature of the charges in this case is one specification of failing to go to appointed place of duty, and 50 specifications of wrongfully and unlawfully making checks. There are no modifications or corrections to the convening order at this time, ma'am. The accused and the following persons detailed to this court-martial are present: Lieutenant Colonel M. N. Guerrero, United States Marine Corps, military judge; Lieutenant William R. Sprance, JAG Corps, United States Naval Reserve, trial counsel; Lieutenant Brian B. Rippel, JAG Corps, United States Naval Reserve, trial counsel; Lieutenant Commander William C. Little, JAG Corps, United States Naval Reserve, defense counsel. Ms. Carol Ross has been detailed court reporter for this court-martial and has previously been sworn.

I have been detailed to this case by myself as senior trial counsel at the Naval Legal Service Office, Washington, DC, ma'am, pursuant to "by direction" authority of the Acting Commanding Officer. I have been certified in accordance with Article 27(b) of the Uniform Code of Military Justice, sworn under Article 42(a) of the UCMJ, and I have not acted in any disqualifying capacity.

MJ: And is the status as to oath and the qualifications the same for the assistant trial counsel?



PAGE 4/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

ATC: Yes, ma'am.

MJ: Have you acted in any disqualifying capacity?

ATC: No, I have not, ma'am.

MJ: Thank you. Defense counsel, would you please state for the record your qualifications and status as to oath?

DC: Yes, ma'am. I've been previously certified and sworn in accordance with Article 27(b) and 42(a), respectively, of the Uniform Code of Military Justice. I was detailed to this court by myself as the senior defense counsel for the Naval Legal Service Office, Washington, DC. I am the only defense counsel detailed in this court-martial, and I have not acted in any disqualifying capacity.

Should the record also reflect, ma'am, that the members are absent.

MJ: There are no members present, that's true, thank you. Seaman MacLean, you have the right to be represented by Commander Little, who is your detailed defense counsel, or you may be represented by military counsel of your own selection, if the person you request is reasonably available. Military counsel are provided to you free of charge. If you are represented by military counsel of your own selection you could ask to keep Commander Little, the detailed counsel, on your case, and that would be at the sole discretion of the person who detailed him to either grant or deny the request. Do you understand your rights to military counsel?

ACC: Yes, I do, Your Honor.

MJ: Has there been any request for an individual military counsel?

ACC: No, there hasn't, Your Honor.

MJ: You also have the right to be represented by civilian counsel at no expense to the government, and if you have civilian counsel you may keep your military counsel on the case. It's up to you. Do you understand you rights to civilian counsel?

ACC: Yes, I do, Your Honor.

MJ: Has there been civilian counsel?

ACC: No, Your Honor.



PAGE 5/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

MJ: By whom do you want to be represented?

ACC: Lieutenant Commander Little.

MJ: I think before we go any further the record should reflect that there was an additional charge, which was not served on the accused until 11 August 1992, which would mean that we would not have passed the five days, is that correct, counsel? Or today would have been the 6th day, but in the mean time, apparently, today that was a charge that was withdrawn so that would not be in front of the court at any rate. I assume we're going to get to that in a minute.

I have been detailed to this court-martial by myself as the Circuit Judge for the Atlantic Judicial Circuit. I am certified in accordance with Article 26(b) and (c), and sworn in accordance with Article 42(a) of the Uniform Code of Military Justice. I will not be a witness for either side in this case. I am not aware of any matter which is ground for challenge, however, I do invite voir dire and challenge by both sides. Government?

TC: The government has neither, ma'am.

MJ: Defense?

DC: The defense has none, ma'am.

MJ: Do you understand that you have the right to be tried by a court-martial composed of members, including, if you ask for it, enlisted members?

ACC: Yes, I do, Your Honor.

MJ: And furthermore, if you're found guilty of any offense and you have members then those members would determine a sentence. Do you understand this?

ACC: Yes, I do, Your Honor.

MJ: You also may request trial by judge alone, and if you did that and that request were granted then there would be no members, the judge would decide whether you are guilty or not, and if you were found guilty of anything then the judge would determine a sentence. Do you understand this?

ACC: Yes, I do, Your Honor.

MJ: Do you have any questions about the difference between a trial with members and a trial by judge alone?



PAGE 6/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

ACC: No, I don't, ma'am.

MJ: By which type of court-martial do you choose to be tried?

ACC: By members, all officers, Your Honor.

MJ: However, you understand the right to have enlisted members, at least one-third enlisted members, if you requested?

ACC: Yes, I do, Your Honor.

MJ: You still request trial by officer members?

ACC: Yes, I do, Your Honor.

MJ: Counsel, I need to put, first of all, two 802's on the record. There was an 802 held here at NDW on the 11th of August with trial counsel, defense counsel, and me, the judge, present. At that time I was advised that in addition to the charges which I was aware, which had been referred on the 6th of August and served on the accused on the 7th of August, that there was the Additional Charge, which had been referred on the 7th of August and served on the accused that morning, the 11th of August. At that time we set a trial date for this court-martial of the 19th and 20th of August. There was another 802 held this morning immediately before this 39(a), at which the same parties were present, and the accused was also present. At that time we went through the charge sheet with the government clarifying what specs had been dismissed and renumbering charges and specifications. And at that time we were informed that the government, pursuant to the direction of--well, actually the convening authority had withdrawn the latest charge which had been referred on 7 August. We also marked as Appellate Exhibits I through X various documents, which we'll get to in a moment. Does either side desire to add anything to the brief description of those two 802 conferences?

TC: The government does not, ma'am.

MJ: Defense?

DC: The defense does not, ma'am.

MJ: Okay. Marked as appellate exhibits have been Appellate Exhibit I, a request for a 39(a) session dated the 12th of August 1992, that was from the government. As Appellate Exhibit II is a defense request for a more definite statement of the charges, which was dated 11 August. Appellate Exhibit III is the government's response to Appellate Exhibit II, and that is dated 12 August. Appellate Exhibit IV is the defense's motion to dismiss for improper

referral, dated 17 August. Appellate Exhibit V is defense's motion to compel discovery dated 17 August, although there had been a previous motion which this overrides, which had been dated 14 August and has not been inserted in the record. Is that correct, defense?

DC: That is correct, ma'am.

MJ: You stand on the later one?

DC: Yes, ma'am.

MJ: Appellate Exhibit VI is the government's response to the discovery motion. Appellate Exhibit VII is a government request to docket dated 7 August 1992. Appellate Exhibit VIII is the defense's discovery request to the government dated the 10th of August. Appellate Exhibit IX is the government's response to that to the defense dated 12 August. And Appellate Exhibit X is a document from Lieutenant Commander Stallings to Commander Little dated 19 June 1992 with four enclosures, the subject of which is psychiatric evaluations in the case of United States versus MacLean. It is my understanding that we will be using several of these documents in the motions to be heard today. Is there anything else to be marked, counsel?

TC: No, ma'am.

DC: Before we proceed, ma'am, I believe that there may be at least one other document. Unfortunately I haven't shown it to the prosecution yet, and I'll have it marked.

[Document marked as Appellate Exhibit XI.]

MJ: Which motion are we addressing first, defense, since they're both your's?

DC: I believe, Your Honor, the best motion to address first might be discovery.

MJ: Okay.

DC: The document is marked as Appellate Exhibit XI, ma'am, and I'll give you a copy and a copy to the reporter.

MJ: This is a copy, Commander Little?

DC: Yes, ma'am, and Carol has one also.

MJ: Commander Little, it would seem to me that for the purposes of this motion we have Appellate Exhibit V, which is your motion;



PAGE 8/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

the government's response and proposed findings of fact, Appellate Exhibit VI; Appellate Exhibit VIII, which is your discovery request; Appellate Exhibit IX, which is the government's response to that; Appellate Exhibit X, which is Commander Stallings' letter; and now Appellate Exhibit XI?

DC: Yes, ma'am.

MJ: Any further evidence on that motion?

DC: Not at this time, ma'am.

MJ: Does the government have any further evidence on that motion?

TC: No, ma'am.

MJ: Does either side want to argue it?

DC: Yes, ma'am.

MJ: Please speak loudly.

DC: Will do, ma'am. At different junctures of this process the defense has requested information, ma'am, information--very important information with regard to this case. When Your Honor reviews the Article 32 you will note that the defense requested of the government any--or questioned the government regarding any reports whatsoever that were completed in this case. That was on the 16th of June of 1992. At that time the NIS agent indicated that there were no reports that were generated. In Appellate Exhibit XI, ma'am, you will notice in the first paragraph, I guess about two-thirds of the way down, that in a letter to Senator Bill Bradley by an agent of the government it appears that a partial report was generated. However, the defense has not received that as of yet. Where it is, ma'am, I have no idea. On the 19th of June, by the government's own evidence, the government--the defense requested certain things with regard to mental examinations of the accused as far back as October 1991. The defense's discovery request, ma'am, again requests information relating to those examinations. As noted in the government's response, Lieutenant Driver, the then SJA, was supposedly amassing the information to forward it to the defense. We have not received that yet. In fact, ma'am, in this case until the 10th--excuse me, the 12th of August the defense had no knowledge of any NIS report whatsoever in this case. And the final piece of that report was not delivered to the defense until late the morning of the 14th of August.

The difficulty in this case, ma'am, is that the prosecution has

been pushing for trial since it had received notice of the referral and notified the defense of the referral, and has been asking for 39(a) sessions and dates of trial. And they have done this, Your Honor, despite the fact that even requests and information relating to this case was not made available.

The prosecution notes that initially that it was not until the 10th of August that the defense even made a request. But by their own document that they submitted themselves, as early as June 19th the defense was making requests for important information, and that information would allow it to proceed. On the 10th we did file a request, ma'am, and we did get a response to it on the 12th. However, by the 12th the prosecution had already brought us to a point that we were trying to go into court on a charge it has now, shall we say, withdrawn. Now, what is occurring with that charge, I do not know, however, in our discovery request we did ask for information from Bolling Air Force Base that went directly to the nature of the allegation, a debt that was wrongfully dishonored. However, today the prosecution says it is withdrawing, so the defense has wasted a great deal of time on nothing. And that would also relate, Your Honor, to the later motion we will discuss.

What we have not received, yet, Your Honor, is any of the medical information requested. We have not received copies of the psychological, psychiatric evaluations. We have not received copies of the subpoenas which the government delivered to numerous individual according to an NIS report to obtain the banking records of the accused. And this is very important, Your Honor, because every indication is that subpoenas were issued prior to the referral of any charge to a court-martial in the United States versus MacLean. And it appears from the scant information I've received, ma'am, that these subpoenas were issued as early as--now from what I have learned the 3rd day of June 1992, which is in advance--more than two months before a court-martial in this case. These subpoenas are very, very important, Your Honor, because it would connect information received by the government to the evidence which they would submit at this court-martial that was obtained in violation of law. Military law is replete with statements and, as I'm sure the trial counsel knows, there is no subpoena power at a 32. I was told by the prosecution that copies of these subpoena would have been in the NIS report. However, Your Honor, as I flip through a document that is close to about 3 or 4 inches I found no such subpoena.

MJ: Excuse me, counsel, what law do you think these subpoenas are in violation of?

DC: Well, Your Honor, we have no subpoena power at a 32. There was no general court-martial or any court-martial in the case of

United States versus MacLean prior to the referral on the 6th of August.

MJ: Is there, though, some other law which relates to getting banking records. There's something in the back of my mind concerning getting banking records, and I think it is pre-referral?

DC: I have no knowledge of any such regulation, ma'am, or any such provision. I know that we have no subpoena power at a 32, and I have not seen any provision which makes any exception to that rule. If Your Honor is aware of some, I know--I know of no such provision, and I've not been provided any by the prosecution informing me otherwise.

At this time, Your Honor, the prosecution is pushing for trial, however, it has not, as of this time, even provided the defense with minimal discovery that it has requested as far back as 19 June. It would be unfair at this time to push us into trial. However, Your Honor, as intimated in the Article 34 advice, this case has serious speedy trial problems. The defense has made efforts, and is still making efforts and would still like to go to court, however, the government should not be allowed to sit back and say "Well, we've given you everything or if you want something to go look for it."

On Thursday morning, ma'am, I went to the prosecution's shop to find Lieutenant Sprance, and this is the 13th. He was not in his office through the morning into the afternoon. On Friday morning I went to his office to review the NIS report, however, at that time he said, "Let me make you a copy of it." I received the copy of it later that afternoon, ma'am. Again, although the prosecution is allegedly making these things available, saying I can come see them, there are just some times when the prosecution is not available. And in this case, Your Honor, where it was only late into the day that I received this voluminous report, and the prosecution is now saying, "Well, we provided discovery", it certainly has but not in a timely fashion.

I would also like to say with regard to discovery, ma'am, and the way that the case is proceeding, at each juncture every time the defense asks for something the case changes drastically. When I asked for a more definite statement, although every charge and every specification that was originally preferred was referred to a court-martial. Now we even find today that they're withdrawing other charges. What has the defense been doing? Trying to get information for things that, perhaps, the government knew, and knew all along, it had no intention of taking to trial. Given a case of this size, with the number of charges and specifications, this is grossly unfair because it is a waste of precious time and resources, and those recourses, Your Honor, even go into drafting all the



PAGE 11/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

motions. Unfortunately this flows over into the other motion on the reopening or the dismissal. However, Your Honor, even on that, it was not until after the motion was received by the government that they even decide to withdraw what is previously Additional Charge II, preferred and referred on the 7th of August and they come into court in this 39(a) session and inform us of such. This is grossly unfair, and it is basically unconscionable. If the government does not know what they're doing in this case, we should not even be here today.

Let me add, Your Honor, at even at this point the government has failed to correct all the defects in the charges and the specifications. There are some charges and specifications, even in this case when you look at the dates, that become an impossibility. And with that, Your Honor, I will close with regard to discovery. May I go over into the next motion now?

MJ: No. I have a question, though.

DC: Yes, ma'am.

MJ: You have referred to both the Article 32 and the 34, are you asking me to consider portions of those?

DC: Oh, please, ma'am.

MJ: Well, tell me what pages. I presume that the 34 is just several pages, but in the 32 what are you asking me to consider specifically, and does the government object? Government, do you object to me considering any portions of the 34 or the 32?

TC: No, ma'am.

DC: In the 32, ma'am, I believe the--in the testimony of Kim Phillips, which begins on page 14 of the transcript, ma'am, page--on page 31 Special Agent Phillips relates that there are no interim reports and that----

MJ: What page?

DC: Page 31, ma'am. That is where I address any reports by NIS.

MJ: Now, Commander, you have told me that you have not received anything back on the psych eval, is that correct, beyond what's in Appellate Exhibit X?

DC: That is correct, ma'am.

MJ: And although Appellate Exhibit X has four exhibits--or



PAGE 12/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

enclosures, the fourth of which is two pages out of a medical record, none of those appear to be the report of a 706 Board, is that correct?

DC: That's correct, ma'am.

MJ: Now, you've also talked about other things, but more in terms of the difficulty you've had in getting them, are you now missing any documents except the subpoenas you'd like copies of and the psych eval reports?

DC: At this time, no, ma'am. Everything else I know is available and--has been made reasonably available.

MJ: How big was the NIS investigation that you finally received a copy of Friday?

DC: It's about 5 inches thick, ma'am.

MJ: Government, are you prepared to give the defense the copies of the subpoenas and any psych eval reports?

TC: Ma'am, we've been attempting to locate--the subpoenas that the government had in their possession were given to the defense counsel, as well as the psychiatric information, as well, he has what the government has in its possession.

MJ: I'm not talking about what the trial counsel has in his possession. I'm talking about have you gone to Bethesda or wherever the 706 Board would have been conducted and do you have copies of the report?

TC: We're attempting to get them, ma'am, at this point.

MJ: Defense?

DC: No, I didn't mean to interrupt, ma'am; I'm sorry, ma'am.

MJ: Well, the minute this 39(a) is over I expect you to get on the phone with the hospital and get the copies. They're to first find out were there any psych evals conducted; if so, where are the reports; and they are to fax you copies of them immediately to give to the defense.

TC: Yes, ma'am.

MJ: That's a court order, you can tell them.

TC: Yes, ma'am.

MJ: Now, the copies of the subpoenas, the defense just says he doesn't have them. Do you have them?

TC: The subpoenas that I have, ma'am, the government--I gave to trial counsel [sic] this morning, the two subpoenas.

DC: Are these the two documents which the prosecution is referring to?

TC: Yes.

DC: I'd like to have those marked, ma'am.

MJ: Okay, have them marked, please.

DC: Ma'am, I believe there may be at this point another document that is necessary. It is the NIS report.

MJ: Five inches?

DC: No, ma'am, just the--I guess you would say----

TC: The prosecutive summary, ma'am.

DC: ---the prosecutive summary of that report.

MJ: Why does it need to be marked?

DC: Well, ma'am, it appears that I have here two subpoenas and, yet, from the report itself there were some almost 12 subpoenas that appeared to have been issued in very early to mid-June, and I believe at this time it becomes relevant. The two subpoenas that I have received, ma'am, I'll have them marked as Appellate Exhibits XII and----

MJ: They can both be XII.

DC: And the prosecutive summary XIII.

[Documents marked as Appellate Exhibits XII and XIII.]

DC: Ma'am, I would also like to deliver to the judge a copy. One of the problems I have with that first document is that it's dated on the top the 17th of June, however, there's a statement there that it was delivered or received on the 12th of June. I--I don't understand how that is physically possible.

MJ: Government, none of these are signed by anyone. Are these subpoenas that were sent?



PAGE 14/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

TC: Yes, ma'am, I believe they were. From all the records that I've looked through, that's--subpoenas that were sent. One indicates it was received by, I believe, Elizabeth Marshall.

MJ: Who is Elizabeth Marshall?

TC: She's from American Security Bank, ma'am, lost prevention officer at American Security Bank.

MJ: Well, the second one has a line for Richard L. Rosser's signature. It's not signed. It's to the custodian of records at CitiCorp Services in Tampa, Florida. I will consider those. So, defense, we still have psych eval reports and subpoenas which you believe are mentioned in Appellate Exhibit XIII, which you have no copies of or documentation of, is that correct?

DC: Oh, they are mentioned, ma'am, about 12 of them, that I'm sure of.

MJ: But you don't have any copies of them?

DC: No, ma'am, and they were not in the report itself.

MJ: In terms of the discovery request you also said defense that at this time you're not requesting a continuance. Now, is that if you get this information or if you don't get this information?

DC: Ma'am, if I could get the subpoenas, I can file my motion almost immediately on suppression. Given where we stand in the charges and specifications that will reduce quite a bit those with which we are confronted at this time.

MJ: Okay. Government, do you have any response to the motion to compel discovery?

TC: Well, just with regard to, ma'am--defense counsel has talked about the motion to suppress, and I'd just call your attention to some case law.

MJ: No, no, no. We're on the motion to compel discovery. If he gets the documents he wants or needs or things may exists and he makes a motion to suppress then you can give me whatever you like. Okay?

TC: Yes, ma'am.

MJ: We're right now on the motion to compel discovery. You've got psych eval reports and copies of subpoenas.

TC: Yes, ma'am.

MJ: What's your argument, or is there any?

TC: On those, ma'am--as we said, we will attempt to get--we've been attempting to get them all along. We will continue to attempt to get them. Other than that, the government has complied with discovery. We have given, as defense counsel said, what they're requested. We did not receive the investigation in this case. The final investigation was done on the 14th, on Friday. I received a sort of a preliminary investigation--or rough draft of the investigation. I notified the defense counsel of that on the 12th, that the examination was available, and that he could examine it if he choose to. On the 14th, ma'am, the reason--if any copy was given to defense counsel later in the day, the defense legalman was given the investigation to copy. So the defense was in possession of the investigation since the morning. The defense counsel is trying to make it seem that we're not delivering things until later in the afternoon, and that we sort of----

MJ: So why didn't you copy it on the day you got it and give it to them? You said you got a preliminary one on the 12th.

TC: I informed the defense on the day that we received it that I had the investigation, and that he could come examine it and copy it if he choose to whenever he desired.

MJ: And then you weren't there on the 13th.

DC: Ma'am, if I may, I believe I completely overlooked it. The other set of documents that I needed came from the Naval Security Group which involved the turning over of the accused to the civilians. I understand from the information I have received that he was in civilian confinement for quite some period of time. He was being held for the government. And, again, as I stated in my motion, ma'am, that information is very important to an Allen credit and anything in extenuation and mitigation.

MJ: Okay, government, would you please get that?

TC: Yes, ma'am.

MJ: If he was turned over there should be plenty of paper work, both turning him over, saying why, where he was kept, and when he was returned.

TC: Yes, ma'am.

MJ: Anything further on the discovery issue?

DC: Nothing from the defense, ma'am.

MJ: Okay, defense, that brings us up then to the motion to dismiss for improper referral, which is Appellate Exhibit IV. Please address that.

DC: Thank you, ma'am. In this motion, I would ask the court to consider the Article 32 investigating officer's report, the report itself, the transcript, however, I don't believe there is anything attached in the documents that are necessary, and the 34 advice. It appears that, Your Honor, for some reason now the government has mooted at least the last issue and that was the former charge referred and preferred on the 7th of August. Therefore, I will try to address my comments generally to how this has proceeded.

The investigating officer's report, ma'am, started off by noticing how insufficient or non-existent the evidence presented by the government was in this case, and that there were objections by the defense to the attempt to circumvent Rules for Courts-Martial 404(g) by allowing the Special Agent to testify to things that people had told her with out having taken one sworn statement or any statements from any individuals. At the 32, Your Honor, the defense objected vehemently. And essentially when the proceedings opened that was the entire government's case. There were no handwriting exemplars. There was nothing except for the testimony of Special Agent Phillips on the charges that were preferred on the 17th of April, the charges that were preferred on the 6th of May. There were charges that were preferred on the 16th, however, when we went into the 32 on the 16th the defense was not prepared to go forward with those charges. In the 32 officer's report, ma'am, the 32 officer notes essentially and states that "With regard to the charges and specifications that were referred to only the Charge I, a four hour UA, Charge II--what was formally Charge III, Specifications 1, 7, and 8, and Additional Charge IV, Specifications 6 through 61, had sufficient evidence."

The 34 advice noted also the insufficiency of the evidence. The 32 officer recommended that the investigation be reopened. However, in the 34 advice, even though the Staff Judge Advocate noted the insufficiency, he says that because of the accused's right to a speedy trial we should go forward. As I have argued in my motion, ma'am, we cannot or we should not balance or circumvent the accused's other rights to a sufficient 32 to ensure that groundless charges are not preferred and referred to a general court-martial for the sake of speedy trial. That has been what this whole sequence of events is all about, Your Honor, because the government is trying to push this to court because it has speedy trial problems, so it wants to disregard those rights.



PAGE 17/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

I would argue to this court, ma'am, that the 32 is totally insufficient, and that the only with regard perhaps Charge I, Charge III, Specifications 1, 7 and 8, and the Additional Charge IV, specifications which used to be 6 through 61, were the only charges that were thoroughly investigated. I would also point out, ma'am, that with regard to Charge IV and those specifications that in the testimony of Mr. Hursberg, and I did cite that in my motion giving the transcript citations, and if I have not, ma'am--excuse me, Mr. Harrisberg, that he did state on cross examination that he had received a subpoena in going to this 32 prior to, I guess it was the--he testified on the 9th, but that in intimated that it was only by virtue of the subpoena was he able to disclose any information concerning the accused's account. That was the first time, ma'am, at the 32, that the defense had received notice of subpoenas being issued.

This is all to say, Your Honor, when we look at the sufficiency of the 32 that the government was aware of all the defects, have been aware of all the defects in the case. The defects were pointed out by the 32 officer, pointed out by the 34 advice, however, when the charges were preferred--excuse me, referred every charge that was formally there was still referred, and we did not get notice of this later. That seems to fly in the face of what our military law says, "No charge should be referred to a general court-martial without a sufficient 32." I would have to question why the government has done this. I'd have to question why up until even today did it take them this long to figure out what charges they're going forward on. Therefore, Your Honor, I would say that the charges have not been properly referred. They've not been, perhaps, given the examination by the GCM authority with regard to taking appropriate action based on the information received. And, therefore, Your Honor, that's why we would ask for a dismissal.

MJ: Government?

TC: Ma'am, with regard to the Article 34 advice and the Article 32, the charges were investigated at the Article 32. The investigating officer made her report, however, the convening authority is not absolutely bound by that report. If he feels that he can refer the charges to trial in good faith----

MJ: Doesn't he have to have evidence?

TC: Yes, ma'am, there has to be evidence. And if the evidence is presented at the Article 32, which it was, the investigating officer in her recommendation might have said that there wasn't sufficient evidence----

MJ: Now, how will I know that the evidence is there. What facts



PAGE 18/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

do I have to show that?

TC: Ma'am, that's--then it would be----

MJ: Are there some specific portions of the record you want me to consider from the 32?

TC: Ma'am, I would ask you basically to consider--with regard to the transcribed testimony of the Article 32, to consider the consider Article 32.

MJ: Everybody?

TC: Pardon me, ma'am?

MJ: All of the testimony?

TC: Yes, ma'am; yes, ma'am.

MJ: I take it there's no objection, defense?

DC: No objection, ma'am.

MJ: Go ahead, counsel.

TC: Basically, that is the government's point, ma'am. When you read--read through the testimony at the Article 32 there is evidence presented and the charges were investigated into. Consequently, despite the fact that the IO felt there might not have been or that insufficient evidence was presented, the convening authority is not bound by her recommendation, if he can see from the record that it indicates otherwise.

MJ: Go ahead. That's it?

TC: Yes, ma'am. I'm sorry, one more point, also, just in closing. There seems to be a bit of dichotomy in the defense counsel's argument because the argument, again, with the subpoenas there was information there at the 32 that shouldn't have been there, yet now he's saying that there wasn't enough information. Technically what happened then at the 32 was the subpoenas enabled discovery to occur and given the defense information that otherwise he might not have had. So there's just some question of what prejudice occurred. Thank you.

MJ: If somebody's bank records were improperly entered, which is what it appears to me the defense might later be questioning, I'm not sure you're right, government. Is there anything further from the defense on this matter?



PAGE 19/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

DC: No, ma'am. My only concern is we're--Wednesday is 2 days away.

MJ: We're currently set for trial on the 19th, which is Wednesday morning at 0800 here at NDW. I expect the government, the minute I close this 39(a) session to get on the telephone to find the 32--excuse me, the 706 Board results--reports rather for the defense, and I expect them to get the subpoenas--copies of any subpoenas which were used, and anything concerning the turn over of the accused to the civilians. I would like a status report about 1400 this afternoon.

TC: Yes, ma'am.

MJ: Defense, if you are out doing something, if you would, at least touch base with the government and authorize them to tell me, at least, what you have been provided with. Do you mind that?

DC: No, ma'am.

MJ: I don't like ex parte conversations, and I don't want the government explaining anything to me as to why they haven't done anything. I want simply to know what you have been provided in the mean time.

DC: The only reason I plan on stepping out of the office today is for a brief lunch period.

MJ: I thought you might be talking to witnesses, I don't know. Okay.

DC: Not on this case, ma'am.

MJ: I will go straight to my office and work on this. So the Article 39(a) is closed.

[The session terminated at 1037 hours, 17 August 1992.]

* * * *

[An Article 39(a) session was called to order at 1500 hours, 17 August 1992.]

MJ: This Article 39(a) session will come to order. The record should reflect that all parties present this morning are again present. We've just held an off-the-record 802 in which I informed defense counsel that I realized about a half hour ago that although I had gone through motions, I had not arraigned the accused. At which time I called the reporter, Ms. Ross, and asked her to notify



PAGE 20/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

the government that I realized I had not done that and if they wanted to go on the record this afternoon for that purpose I would be here and be willing to. About 10 minutes later the government called me and said it would like to do that, accordingly we're here. The defense also said at the 802 that it had hoped that wouldn't be done or that I should be aware that would stop the running of the clock under the present Rule for Courts-Martial 707, which is true. We then went on to discuss what had been done with respect to the discovery, which I asked the government to do this morning. The government said that there has not been a 706 Board conducted according to Lieutenant Sullivan [sic], the assistant staff judge advocate at Bethesda; that there were some summaries of consultations which the government will provide. Is that correct, government?

TC: Yes, ma'am, that is correct. It is Lieutenant Sutton, Margaret Sutton not Lieutenant Sullivan.

MJ: Sorry. Secondly, that the government cannot find copies of any subpoenas sent to the banks, but that the government is willing to stipulate with the defense that subpoenas were sent. They will attempt to figure out to what banks, and during what rough time frame they were sent. I did read the appellate exhibit the defense offered me, the narrative summary from NIS, and I believe I saw reference to 6 subpoenas which were to the Navy Federal Credit Union, CitiBank, Chemical Bank, Penacola Credit Union, American Security Bank, Trust Bank. The government says it has some information on the documents regarding the accused's turnover to the civilians, but the defense has pointed out that what it particularly wants is any information relative to the initial turnover and the reasons therefore. Is that correct, defense?

DC: Yes, going through his continued confinement here, ma'am. I understand that there were a number of communications along the way between the military and civilian authorities.

MJ: Okay, and the government is directed to get those from the convening authority and provide them to the defense. Did we cover anything else at the 802?

DC: Nothing that I can think of from the defense, ma'am.

MJ: Government?

TC: No, ma'am.

MJ: I want to be real sure that I understand the charges. We have one Charge I, Article 86, one specification; one Charge II, a violation of Article 123a preferred on the 17th of April with 8



PAGE 21/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

specifications now, and that was originally Charge III, is that correct?

TC: Yes, ma'am, that is correct.

MJ: Okay. We have an Additional Charge I, a violation of Article 123a, with 7 specs; those were preferred on the 6th of May, and that was originally Additional Charge I as well as currently Additional Charge I, is that correct?

TC: Correct, ma'am.

MJ: Then we have Additional Charge II, which is 35 specifications, a violation of Article 123a. Those were preferred on 15 June 1992, and that was Additional Charge IV, is that correct?

TC: Yes, ma'am.

MJ: Okay, government, the referral on 6 August of Additional Charge--what is now Additional Charge II, on my charge sheet indicates it was referred to general court-martial convening order number 2G-92, is that correct?

TC: I believe the convening order, ma'am, is 6G-92. That would be a miss--basically a typo, ma'am.

MJ: Well, it seems to me that you had better check with the person who referred those and be sure that it is a typo, an administrative error.

TC: Yes, ma'am.

MJ: Would the accused and counsel please rise.

[DC and accused stood.]



PAGE 22/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

MJ: Cryptologic Technician Administration Seaman Norbert B. MacLean, United States Navy, I now ask how you plead, however, before entering pleas I advise you that any motion to dismiss or to grant other relief which are not already made should be made at this time. Having said that I will state, however, Commander Little, that you have put me on notice previously today that depending on the evidence you receive from the discovery request there may be a motion to suppress and there may be a speedy trial motion, is that correct?

DC: That is correct, ma'am.

MJ: Do you expect any other motions?

DC: Ma'am, given--given the status of this, again I haven't seen the psych reports and any number of other things, I can think of any number of motions that may arise.

MJ: Okay, are you withholding pleas?

DC: I would like to withhold pleas, ma'am, at this time, also given the fact of the motion pending on the--I guess we could say the sufficiency of the Article 32 that would be another reason why I would oppose going through arraignment today because I'm not sure what we'd plead to because I'm not sure what would be before the court.

MJ: Okay, I understand that. Government, I want to remind you again that I still don't have the Article 34 advice letter that I was asked to consider on the motions. I need a copy of that.

TC: Yes, ma'am.

MJ: Is there anything else before we recess?

TC: Not from the government, ma'am.

DC: Not from the defense, ma'am.

MJ: Court is in recess.

[The session recessed at 1508 hours, 17 August 1992.]

* * * *

[An Article 39(a) session was called to order at 1509 hours, 17 August 1992.]

MJ: The Article 39(a) session will come back into session,



PAGE 23/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24

please be seated, having just recessed. The court reporter reminded me that prior to arraigning, I had not asked the accused did he want the charges and specifications read. Defense, would you like the charges and specifications to be read at this time?

DC: Not at this time, ma'am.

MJ: It is waived at this time, and I did previously ask you to stand and enter pleas. And you stood and told me that you understood your rights but you choose not to enter pleas at this time, is that correct?

TC: That is correct, ma'am.

MJ: Thank you. What this does, however, at arraignment time it means that if the court continues and you're not here, and it is scheduled to begin here on Wednesday morning, do you understand that?

ACC: Yes, I do, ma'am.

MJ: That after arraignment the court could continue without your presence if you voluntarily absented yourself from the court. Do you understand that?

ACC: Yes, Your Honor.

MJ: Any questions?

ACC: No, Your Honor.

MJ: Do you understand it is this very building, no later than 0800 on Wednesday morning?

ACC: Yes, Your Honor.

MJ: That's the 19th of August.

ACC: Yes, I do, Your Honor.

MJ: Okay, court's in recess. Thank you.

[The session terminated at 1510 hours, 17 August 1992.]

* * * *



PAGE 24/48 * RCVD AT 5/25/04 10:04:51 AM [Pacific Daylight Time] * SVR:SDCS01/1 * DNIS:7071 * CSID: * DURATION (mm-ss):14-24