# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NORBERT BASIL MacLEAN III,<br>Plaintiff,<br>-vs.-<br>THE UNITED STATES,<br>Defendant. | Case No. 04-0448-C<br><br>Judge: Hon. Mary Ellen Coster Williams |

## PLAINTIFF'S SUPPLEMENT TO OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Norbert Basil MacLean III, by and through his undersigned attorneys, hereby supplements his opposition to Defendant's Motion to Dismiss, as permitted by this Honorable Court during oral argument held on January 28, 2005.

### I. MR. MACLEAN'S CAUSE OF ACTION UNDER THE TUCKER ACT DID NOT ACCRUE UNTIL FEBRUARY 9, 2004, WHEN HE EXHAUSTED HIS MILITARY JUDICIAL REMEDIES.

#### A. A Bad Conduct Discharge Following a Court-Martial is A Punitive Discharge.

The U.S. Court of Claims, which was subsequently renamed the U.S. Court of Federal Claims, has held that "only a court-martial can impose **a punitive discharge**, and these discharges, i.e. **bad conduct and** dishonorable, are imposed for punishment." *Grant v. United States*, 162 Ct.Cl 600, 611 (Ct. Cl. 1963) (emphasis added). Civilian federal courts have similarly addressed what constitutes a punitive discharge, and have consistently held that "**the bad conduct discharge is a punitive discharge**, which, under

the Uniform Code, can only be given by a special or general court martial." *McCurdy v. Zuckert*, 359 F.2d 491, 494 (5th Cir. 1966) (emphasis added). See *Henry v. Department of the Navy*, 886 F.Supp 686, 688 (E.D. Ark. 1995) ("at the time of plaintiff's discharge, the regulations authorized five categories of discharge: honorable, general, undesirable, bad conduct, and dishonorable. 32 C.F.R,. § 730.51 (1969). The dishonorable discharge and **bad conduct discharge are expressly punitive** and can be awarded only upon conviction or a plea of guilty in a court-martial proceeding. The other three types of discharges can be awarded administratively.") *Miller v. Lehman*, 801 F. 2d 492, 498 (D.C. Cir. 1981).

### B. Appealing A Punitive Discharge Requires That A Service Member First Exhaust His Military Judicial Remedies.

Mr. MacLean received a bad conduct discharge as a result of his court-martial. Therefore, his discharge was punitive. As such, it is well-established that prior to invoking this Honorable Court's jurisdiction under the Tucker Act, he was required to first exhaust all available military judicial remedies with respect to his claims of a fatal jurisdictional defect in the creation of the court martial rising to the level of constitutional deprivation of due process.[1] *See Schlesinger v. Councilman,* 470 U.S. 738, 758 (1975); *Gusik v. Schilder*, 340 U.S. 128, 131-32 (1950) ("The policy underlying [the exhaustion]

---

[1] The fatal jurisdictional defect is the special court-martial convening authority, Commander Cosgriff's, Rules for Courts-Martial 401(c)(2)(A) recommendation for general court-martial over the contrary findings of the investigating officer under 10 U.S.C. § 832. (Exhibit L to Complaint) Once the final documented adjudication of plaintiff's previously filed Article 138 Complaint [10 U.S.C. § 938] was released, which occurred in August 2002, that provided the critical evidence to establish for the first time that there was in fact a fatal jurisdictional defect in the creation of the general court-martial. Plaintiff had a due process right to a special court-martial convening authority free from an other-than-official interest in his prosecution. *U.S. v. Nix*, 40 M.J. 6 (CMA 1994).

rule is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state courts."); *Middendorf v. Henry*, 425 U.S. 25, 29 (1976) ("exhaustion requirement is designed to protect the military from undue interference by the federal courts"); *Cooper v. Marsh*, 807 F.2d 988, 991 (Fed. Cir. 1986) ("In order to satisfy the exhaustion doctrine, [a plaintiff] must have given the military courts an opportunity to pass upon the claims he now asserts as bases for attacking his court-martial."); *Williams v. Secretary of the Navy*, 787 F.2d 552, 558 (Fed. Cir. 1986) ("The general rule requires that, before seeking to collaterally attack [a] court martial conviction in the civilian court[s], [a plaintiff] must have exhaust[ed] all remedies available to him within the military."); *Bowling v. United States*, 713 F.2d 1558, 1559 (Fed. Cir. 1983); *Bowman v. Wilson*, 672 F.2d 1145, 1157 (3rd Cir. 1982) ("serviceman in the custody of the Military must exhaust all available remedies within the Military before a federal court can entertain a petition for habeas corpus"); *Williams v. Wilson*, 762 F.2d 357, 359 (4th Cir. 1985) ("a [civilian] court should not review internal military affairs in the absence of . . . exhaustion of available intraservice corrective measures"); *Mindes v. Seamans*, 453 F.2d 197, 201 (5th Cir. 1971); *Nieszer v. Mark*, 684 F.2d 562, 563-64 (8th Cir. 1982), *cert. denied* 460 U.S. 1022 (1983); *Gonzalez v. Department of the Army*, 718 F.2d 926, 929-30 (9th Cir. 1983); *Lindenau v. Alexander*, 663 F.2d 68, 71 (10th Cir. 1981); *Rucker v. Secretary of the Army*, 702 F.2d 966, 969-70 (11th Cir. 1983).

The only military remedy available[2] to plaintiff after first discovering the favorable documented final adjudication of his Article 138 Complaint, which provided

[2] There was no military remedy to be had with the Board of Corrections of Naval Records

the critical evidence to establish a fatal jurisdictional defect in the creation of the court-martial, was with the military appellate courts under the terms of the All Writs Act, 28 U.S.C. § 1651(a). Thus, plaintiff first had to turn to the military courts with his constitutional due process claims under the All Writs Act before he could invoke this Court's jurisdiction under the Tucker Act and Fifth Amendment. *Schlesinger v. Councilman*, *supra*, 470 U.S. at 758; *Gusik v. Schilder*, *supra,* 340 U.S. at 131-32; *Middendorf v. Henry*, *supra,* 425 U.S. at 29; *Williams v. Secretary of the Navy*, *supra,* 787 F.2d at 558; *Cooper v. Marsh*, *supra*, 807 F.2d at 991.

Defendant's reliance upon *Martinez v. United States*, 333 F. 3d 1295 (Fed. Cir. 2003) for the proposition that Mr. MacLean was not required to exhaust his military judicial remedies is misplaced. *Martinez* is fundamentally distinguishable from this case because although *Martinez* was discharged, his discharge was "honorable" and not as a result of a court-martial.[3] Thus, it was not punitive, as described in *Henry,* as well as the applicable military regulations -- 32 C.F.R. § 730.51 (1969)[4] -- which distinguish between Mr. MacLean's bad conduct discharge following a court-martial as being punitive and honorable discharges, like *Martinez,* as non-punitive. As *Henry* held, an honorable discharge -- like *Martinez* -- can be handled administratively, while a punitive

("BCNR") as it lacks the statutory authority to set aside or vacate a court-martial conviction. 10 U.S.C. § 1552(f). plaintiff pled that fact. (Complaint at ¶ 10) Prior to 1983 the BCNR had the statutory authority to vacate a court-martial but Congress curtailed the various service boards of correction's jurisdiction by enacting § 1552(f).

[3] In fact, *Martinez* service was characterized as "honorable," but he was separated from Army service by an administrative Officer Elimination Board due to "misconduct," and not as a result of punishment imposed by a court-martial. *Martinez* at 1299.

[4] Since the *Henry* case was published, 32 CFR 730.51 (1969) has been renumbered. Administrative discharges are now at 32 CFR 724.109 and punitive discharges are listed in 32 CFR 724.111.

discharge, like Mr. MacLean's, necessitates the exhaustion of military judicial remedies. In fact, the military appellate courts lacked jurisiction over the *Martinez* discharge because those courts have limited jurisdiction to review only findings and sentences imposed by a court martial. 10 U.S.C. § 866, 867. Since the *Martinez* discharge was not from the findings and sentence of a court-martial, the military courts have no jurisdiction to review his claims. *See Martinez* at 1299. Likewise, the military appellate courts had no jurisdiction to review non-judicial punishment. *See* 10 U.S.C. §§ 815(e), 866, 867.

Consequently, defendant's reliance upon *Martinez* is misplaced. *Schlesinger* and its progeny all require that, in Mr. MacLean's case of a punitive discharge, he first exhaust all available military judicial remedies before invoking this Court's jurisdiction. Thus, the statute of limitations under the Tucker Act did not accrue until Mr. MacLean exhausted his military judicial remedies, which did not occur until February 9, 2004.

## II. ALTERNATIVELY, ASSUMING *ARGUENDO* THAT MR. MACLEAN WAS NOT REQUIRED TO EXHAUST HIS MILITARY JUDICIAL REMEDIES BEFORE INVOKING THIS COURT'S JURISDICTION, THE STATUTE OF LIMITATIONS SHOULD NONETHELESS BE EQUITABLY TOLLED.

Mr. MacLean recognizes that equitable tolling is a narrow doctrine which is used sparingly. However, under appropriate circumstances, like here, equitable tolling of the statute of limitations is appropriate, including with respect to the Tucker Act. *See, e.g., Deason v. United States,* 54 Fed. Cl. 509, 513 (Fed. Cl. 2002) (holding that equitable tolling of the Tucker Act's six-year limitations period was possible where plaintiff failed to file a timely claim due to his reliance on defendant's representation that overtime payment was forthcoming). Equitable tolling specifically applies where, like here, the

claim was "inherently unknowable." *See Ewer v. United States,* 2005 WL 44438 (Fed. Cl. 2005); *Hickman v. United States*, 43 Fed. Cl. 424, 425 (Fed. Cl. 1999).

In fact, as the *Martinez* court held, in a Tucker Act claim against the United States, plaintiffs can meet either of two standards to establish equitable tolling. *See Martinez*, 333 F. 3d at 1318-1319. *See also De La Torre v. United States of America,* 2004 WL 2026415 (N.D. Cal. 2004). The two standards are: 1) There must be a compelling justification for delay, such as where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. *Id.* at 1318 (quoting *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96 (1990)). "Under the second standard, 'accrual of the claim against the United States is suspended . . . until the claimant knew or should have known that the claim existed." *Id.* at 1319.

The Ninth Circuit applies this same standard. In *Alvarez-Machain v. United States,* 107 F. 3d, 696, 700 (9th Cir, 1997), the Court explained that "in general, a cause of action accrues when the plaintiff knows or in the exercise of reasonable diligence should know, of both the injury and its cause. When a plaintiff seeks to bring a claim outside of that time frame under the doctrine of equitable tolling, the plaintiff may do so if 1) the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant . . . or 2) extraordinary circumstances beyond plaintiff's control made it impossible to file the claims on time." *Alvarez-Machain* at 701 (quoting *Seattle Audubon Soc. v. Robertson*, 931 F.2d 590, 595 (9th Cir. 1991).

This case fits squarely within the type in which equitable tolling applies, as it was not until 2002 that Mr. MacLean knew or should have known that his claim existed given

that until then, despite his diligence -- including filing a motion to compel production of the Article 138 final adjudication, which motion was denied -- he had not received documented evidence that his Article 138 Complaint had been adjudicated in his favor.

Prior to that time, plaintiff did raise the fact that he filed an Article 138 Complaint against his commanding officer in the 1994 direct review of his court-martial with the formerly named U.S. Navy-Marine Corps Court of Military Review[5] ("NMCMR") and his military appellate attorneys argued the error of "unlawful command influence."[6] (Complaint at ¶ 33) In fact, both the assistant detailed military defense counsel at the court-martial, Lieutenant Nielsen, and the appellate defense counsel, Lieutenant Colonel

[5] That military service appellate court has since been renamed the U.S. Navy-Marine Corps Court of Criminal Appeals.

[6] "It is well settled that every service member tried by court-martial is entitled to have his guilt or innocence tried by a court solely upon the evidence presented at the trial, free from questionable motives and free from all unlawful influence exerted either by military superiors or others." *See United States v. Allen*, 31 M.J. 572, 583 (NMCMR 1990), *aff'd* 33 M.J. 209 (CMA 1991) *cert. denied* 503 U.S. 936 (1992). On direct review under 10 U.S.C. § 866(c), plaintiff raised "unlawful command influence," citing the filed Article 138 Complaint. However, *documentary evidence* of the final adjudicated Article 138 Complaint to support Cosgriff's other-than-official interest was unavailable to plaintiff and his attorneys. (Complaint at ¶ 33) In 1994, with respect to the unlawful command influence argument, the Government specifically argued in the direct review that plaintiff "provided no evidence that [Commander Cosgriff's] discretion in referring the charges was improperly compromised." Without a doubt, in 1994 no documentary evidence was available because the documented adjudication of the Article 138 Complaint showing the favorable outcome was delivered by the Navy to the wrong command. (*See generally* Docket ## 15, 16, 17) plaintiff was first delivered the final documented adjudication – a critical piece of evidence – when his military lawyer received it from the Assistant Secretary of the Navy's office in August 2002. (Complaint at ¶¶ 18, 34) After the delivery of the *documented* adjudicated Article 138 in August 2002, plaintiff had evidence to establish Cosgriff's discretion was in fact compromised in making an R.C.M. 401(c)(2)(A) recommendation for court-martial, because Cosgriff had an other-than-official interest in the prosecution of the plaintiff due to the meritorious Article 138 Complaint. Significantly, an impartial investigating officer appointed by Cosgriff held that reasonable grounds *did not* exist to believe plaintiff committed the offenses alleged. (Complaint at Exhibit L) Cosgriff recommended court-martial anyway. It should be noted that the R.C.M. 401(c)(2)(A) recommendation is missing from all Navy records. (Complaint at 24; Exhibit N – Q to Complaint)

Hammond, have stated in declarations that they did not know of the final adjudication to the Article 138 Complaint. (Complaint at Exhibits T, U) Thus, Colonel Hammond had to tailor his appellate arguments to one of "unlawful command influence" instead of a constitutional deprivation of due process caused by a fatal jurisdictional defect in the creation of the court-martial. (Complaint at Exhibit T, ¶ 3).

It is undisputed that the Navy sent the final adjudication to a wrong command. Whether that was done inadvertently or intentionally is irrelevant because plaintiff did not receive the documented adjudication until 2002. (Complaint at ¶¶18, 34; *See also* Docket ## 15, 16, 17) Plaintiff's belief in the success of his Article 138 Complaint is *not* the same as the having *documentary evidence* of the final adjudication, as without that proof, plaintiff could not make the claims he is now asserting. In this regard, it is also undisputed that in 1994 plaintiff did in fact file a motion to compel, due to his belief in the success of the Article 138 Complaint, with the NMCMR seeking documents associated with his unlawful command influence argument. (Complaint at ¶ 33, fn 10) However, in 1994 the Government opposed and NMCMR denied plaintiff's motion to compel. (Complaint at fn 10)

Not until the Navy delivered the final documented adjudication of the Article 138 Complaint to the plaintiff, which occurred in 2002, did all the events occur to fix the Government's liability to the claims now before this Honorable Court.

Given the unusual facts and circumstances, this case is a prime example where equitable tolling should be applied. Plaintiff has acted diligently upon receiving the documented adjudication by filing a petition for extraordinary relief and subsequent writ-

appeal, under the terms of the All Writs Act, within the military justice system the very same year after he discovered the critical evidence. (Complaint at ¶¶ 15 – 18) And within six weeks after exhausting all military judicial remedies, plaintiff filed his claims in this Court under the Tucker Act.

Thus, not only did plaintiff act diligently to attempt to learn the adjudication of his Article 138 Complaint, but upon finally learning of it, he acted diligently to bring his claims, first in the military courts, and then here. Plaintiff should not now be penalized by dismissal of this action due to the Government's game of hide-the-ball with critical documents for over a decade.

## CONCLUSION

This Court's jurisdiction is well pled. The final documented adjudication of plaintiff's Article 138 Complaint was delivered by the Navy to a wrong command at no fault of the plaintiff. Further, plaintiff attempted to obtain all relevant documents with respect to his claim of unlawful command influence by Commander Cosgriff, through a motion to compel, that was denied in the military courts. Upon the Navy's delivery of the final documented adjudication of plaintiff's Article 138 Complaint to his military counsel in 2002, plaintiff diligently prosecuted the claims of a fatal jurisdictional defect in the creation of the court-martial and vindictive prosecution rising to a constitutional deprivation of his due process in the military courts.

Since this case seeks to collaterally attack a court-martial conviction on constitutional grounds, via the Tucker Act, and involves a punitive discharge, under well established case law plaintiff first had to exhaust *all* available military judicial remedies.

Plaintiff exhausted such remedies on February 9, 2004, and within six weeks brought suit in this Court under the Tucker Act to collaterally attack the fatal jurisdictional defect in the creation of the court-martial, which violated plaintiff's constitutional due process.

Plaintiff's punitive discharge from Naval service resulted in the loss of his inherent rights together with civil disabilities, as well as the public stigma of a bad conduct discharge. The Government must not be rewarded with dismissal of this case for playing hide-the-ball with critical documentary evidence which proves that the court-martial should never have been brought. Accordingly, the Government's motion to dismiss must be denied.

Dated: February 3, 2005

Respectfully submitted,

HELLER EHRMAN WHITE & McAULIFFE LLP

By s/ Daniel S. Silverman

DANIEL S. SILVERMAN, ESQ.
HELLER EHRMAN WHITE & McAULIFFE LLP
4350 La Jolla Village Drive, 7th Fl.
San Diego, CA 92122-1246
Telephone: (858) 450-8400
Facsimile: (858) 450-8499

*Attorneys for Plaintiff*
*NORBERT BASIL MACLEAN III*