# In the United States Court of Federal Claims

No. 04-448C
(Filed July 22, 2005)

```
* * * * * * * * * * * * * * * * * * * * * * * * * *
                                          *
NORBERT BASIL MacLEAN III,                *
                                          *    Statute of Limitations;
              Plaintiff,                  *    28 U.S.C. § 2501; Equitable
                                          *    Tolling; Military Pay Act;
       v.                                 *    37 U.S.C. § 204; Court-
                                          *    Martial; Exhaustion of
THE UNITED STATES,                        *    Administrative Remedies;
                                          *    Writ of Error Coram Nobis.
              Defendant.                  *
                                          *
* * * * * * * * * * * * * * * * * * * * * * * * * *
```

Daniel S. Silverman, Heller Ehrman White McAuliffe LLP, San Diego, CA, for Plaintiff.

Gerald M. Alexander, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant. Lieutenant Colonel James K. Carberry, Department of the Navy, Officer of the Judge Advocate General, General Litigation Division, Washington, D.C., of counsel.

---

### MEMORANDUM OPINION AND ORDER OF DISMISSAL

---

**WILLIAMS**, Judge.

Plaintiff, Norbert Basil MacLean, challenges his involuntary discharge from the Navy resulting from his conviction by an allegedly illegal court-martial. Specifically, Plaintiff seeks back pay, expungement of the conviction from his record, reinstatement to active duty, and a declaratory judgment that the conviction by general court-martial was a deprivation of his due process rights.

This matter comes before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction. Because Plaintiff filed this action almost ten years after his discharge and has not demonstrated facts warranting equitable tolling of the six-year statute of limitations, his complaint is time-barred. As such, the Court is without jurisdiction to hear his claims, and

Defendant's motion is granted.[1]

## Background[2]

### The Article 138 Complaint

Plaintiff served in the United States Navy from 1989 until August 1994. On February 20, 1992, Plaintiff filed an Article 138 complaint against his commanding officer (CO), Commander Robert W. Cosgriff, alleging wrongful reduction in pay and harassment.[3] Compl., Ex F. On November 9, 1992, the Navy resolved the Article 138 complaint in Plaintiff's favor. Compl. ¶¶ 3, 4, 18. Plaintiff's records reflect his reinstatement to petty officer third class and indicate that his reduction in rank was to be set aside. On May 4, 1993, the Assistant Secretary of the Navy upheld that decision, in final resolution of the complaint.[4] Compl., Ex. S.

Although his Article 138 complaint was favorably resolved in 1993, Plaintiff alleges that he was unaware of the result until August 2002, when he received a copy of the May 4, 1993, final decision for the first time, pursuant to a Freedom of Information Act (FOIA) request. Compl. ¶ 3. Plaintiff alleges that the Navy sent the May 4, 1993, final decision to the wrong place -- his previous command, but not to his home address of record or the command where he was serving in 1993. Id.

### The Court Martial and Review

On October 31, 1992, after Plaintiff had filed his Article 138 complaint, but before that

---

[1] Although Defendant brings its motion to dismiss under RCFC 12(b)(6) for failure to state a claim upon which relief may be granted, Defendant's motion will be treated as one brought pursuant to RCFC 12(b)(1) because compliance with this Court's statute of limitations is jurisdictional. Jones v. United States, 801 F.2d 1334, 1335 (Fed. Cir. 1986); see Cristina Inv. Corp. v. United States, 40 Fed. Cl. 571, 576 (1998).

[2] This background is derived from Plaintiff's complaint and attachments as well as appendices to the papers filed in conjunction with the pending motion.

[3] An Article 138 complaint is a means of redress for a member of the armed services aggrieved by his commanding officer. The complaint is filed by the service member with his commanding officer's superior, who then forwards the complaint to the officer exercising general court-martial authority over such commanding officer. 10 U.S.C. § 938.

[4] The May 4, 1993, letter from the Assistant Secretary of the Navy stated: "I have determined that the action of the general court-martial authority, Commandant, Naval District Washington, as communicated to you by the letter of 9 November 1992, is correct, and I approve it." Compl., Ex. S. The November 9, 1992 letter is not in the record. The parties informed the Court that despite their best efforts, they have been unable to obtain the referenced letter.

complaint was resolved, Plaintiff's general court-martial was conducted. Plaintiff plead guilty to and, was convicted of, twelve specifications of writing bad checks totaling over $8,000 with the intent to defraud in violation of Article 123a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 923a. Compl., Ex. D at 1. Plaintiff was acquitted of a charge of unauthorized absence, and was sentenced to a term of "confinement for 40 months, forfeiture of all pay and allowances, reduction to pay grade E-1, and a dishonorable discharge." Id. In accordance with a pretrial agreement, all confinement in excess of time already served was suspended. Compl., Ex. B at 2.

On review, the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) considered several assignments of error, "including one that the petitioner was prejudiced by his commanding officer's alleged unlawful influence over the court-martial process." Id. The NMCCA addressed Plaintiff's allegation of unlawful command influence as follows:

> In his second supplemental assignment of error, the appellant "maintains that because he had filed an Article 138 complaint against his commanding officer, the commanding officer had a personal interest in . . . [his] prosecution, and that the commanding officer's action in the pretrial process support that position." Appellant's Brief of 31 March 1994, at 6. Even if we agreed with the appellant that his commanding officer had more than an official interest in the appellant's prosecution, he did not convene this court-martial. It was convened by the officer exercising general court-martial jurisdiction over both the appellant and the appellant's commanding officer. There is nothing in the appellant's allegations to support the conclusion that the convening authority was in any way disqualified or that any unlawful command influence affected this court-martial.

Compl., Ex. D at 6.

In June 1994, the NMCCA affirmed the findings and sentence. Compl., Ex. D. Plaintiff did not appeal the NMCCA's decision to the United States Court of Appeals for the Armed Forces (CAAF), as authorized by statute 10 U.S.C. § 867. On August 29, 1994, Plaintiff was discharged from Naval service.

**Plaintiff's Two Petitions for Writ of Error Coram Nobis**

On May 13, 2002, Plaintiff filed a petition for extraordinary relief in the nature of a writ of error coram nobis with the NMCCA, contending that the general court-martial lacked jurisdiction to try him. Compl. ¶ 16. On August 12, 2002, the NMCCA denied the petition. Id. Plaintiff filed a writ-appeal petition to the CAAF, which was denied on August 30, 2002. Compl. ¶ 17.

On June 13, 2003, Plaintiff filed a second petition for writ of error coram nobis with the NMCCA, again challenging the jurisdiction of the general court-martial, as well as asserting other grounds challenging his conviction. Compl., ¶ 20. Plaintiff sought vacatur of the general court-

3

martial and reinstatement to active duty with back pay and privileges, again arguing that his commanding officer acted in an unlawful, vindictive manner to ensure his conviction by general court-martial.  At the outset, the NMCCA found that a writ of error coram nobis was "traditionally used to correct factual errors, but it now encompasses constitutional and other fundamental errors, including claims sounding in due process."  Compl., Ex. B at 2 (citations omitted) (quotations omitted).  Moreover, the NMCCA noted that the writ "may not be used to seek a reevaluation of the evidence or to relitigate alleged errors."  Id.  Accordingly, NMCCA rejected Plaintiff's contentions, noting that Plaintiff had previously raised the issue of unlawful command influence:

> Most of the petitioner's remaining arguments are rooted in a general complaint that his commanding officer departed from his proper statutory and regulatory roles as a commander and special court-martial convening authority and, instead, acted in an improper, unlawful, and vindictive manner to ensure that the petitioner would be tried by a general court-martial and convicted by that court-martial.  We have carefully considered this general complaint, all of its associated arguments, and the various documents submitted.  We conclude that the petitioner has failed to demonstrate that he is entitled to relief.
>
> Initially, we note that the petitioner was aware of this potential general issue during direct review of his conviction and sentence because he raised unlawful command influence of his commanding officer as a specific assignment of error.  Thus, we have already considered, and rejected, the issue of unlawful command influence.
>
> Furthermore, the petitioner could have raised the issues of unlawful command influence and vindictive prosecution at trial.  Our review of the record of trial indicates that the petitioner filed various motions regarding the Article 32, UCMJ, investigation and the referral of charges, but withdrew those motions once he obtained a very favorable pretrial agreement limiting confinement to time served.  However, even then, he obviously did not feel constrained in the exercise of his constitutional right to a trial of the charges because he entered pleas of not guilty to Charge I and its Specification (unauthorized absence) and vigorously contested that Charge in the subsequent contest.  Ultimately, the petitioner was successful in obtaining an acquittal on that Charge.

Compl., Ex. B at 6.

    Thus, on December 22, 2003, the NMCCA denied Plaintiff's second petition for a writ of error coram nobis.  See Compl., Ex. B at 7; Compl. ¶ 20.  On February 9, 2004, the CAAF denied Plaintiff's writ-appeal petition of the NMCCA decision.  Compl., Ex. C.

**The Instant Action**

On March 18, 2004 -- more than nine and a half years after his discharge from the Navy -- Plaintiff filed suit in this Court for back pay and ancillary equitable relief. Plaintiff alleged that his conviction by a general court-martial violated his rights to due process under the Fifth Amendment because his CO harbored animosity against him and had an other-than-official interest in recommending court-martial. Compl. ¶ 32.

**Discussion**

Subject matter jurisdiction may be challenged at any time by the parties, by the Court sua sponte, and even on appeal. Booth v. United States, 990 F.2d 617, 620 (Fed. Cir. 1993). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993); Holland v. United States, 57 Fed. Cl. 540, 551 (2003). Ultimately, however, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

The Tucker Act both confers jurisdiction upon the United States Court of Federal Claims and waives sovereign immunity with respect to certain actions for monetary relief brought against the United States. See United States v. Mitchell, 463 U.S. 206, 212-18 (1983); Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). Under the Tucker Act, sovereign immunity is waived for "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the Tucker Act does not, by itself, "create any substantive right enforceable against the United States for money damages." United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Testan, 424 U.S. 392, 398 (1976)).

To properly invoke this Court's jurisdiction, "a plaintiff must identify a separate source of substantive law that creates the right to money damages," i.e., a source which is "money mandating." Fisher, 402 F.3d at 1172. In this action, Plaintiff seeks back pay and ancillary equitable relief pursuant to the Military Pay Act, 37 U.S.C. § 204, which is a "money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge."[5] Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997).

---

[5] In relevant part, the Military Pay Act provides that uniformed service members on active duty are entitled to the basic pay of the pay grade to which they are assigned. 37 U.S.C. § 204(a). This statutory provision has been construed as money-mandating because "[i]f the discharge was wrongful the statutory right to pay continues; this right serves as the basis for Tucker Act jurisdiction." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997).

The Tucker Act's jurisdictional grant is limited by 28 U.S.C. § 2501, which states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." In this Court, "[t]he 6-year statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988); Accord Forman v. United States, 329 F.3d 837, 841 (Fed. Cir. 2003); Bowen v. United States, 292 F.3d 1383, 1385 (Fed. Cir. 2002); Inter-Coastal Xpress, Inc. v. United States, 296 F.3d 1357, 1365-66 (Fed. Cir. 2002); Jones v. United States, 801 F.2d 1334, 1335 (Fed. Cir. 1986); Coon v. United States, 30 Fed. Cl. 531, 534 (1994) ("Compliance with the statute of limitations . . . is an explicit jurisdictional prerequisite for the commencement of suit.").

Under the Tucker Act, a claim accrues "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citation omitted). It is well established that in a military discharge case, "the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge." Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003); see Bowen v. United States, 292 F.3d 1383, 1386 (Fed. Cir. 2002). In Martinez, the Federal Circuit held that a service member has an immediate cause of action upon discharge for the pay being withheld and noted "that a Tucker Act claim for back pay accrues all at once at the time of discharge; the claim for back pay is not a 'continuing claim' that accrues each time a payment would be due throughout the period that the service member would have remained on active duty." Martinez, 333 F.3d at 1303. In this action, there is no dispute that August 29, 1994, was the date Plaintiff was discharged from the Navy. Therefore, absent any tolling, the latest that Plaintiff could have brought suit in this Court was August 29, 2000 -- six years after the date of discharge. See, e.g., Carter v. United States, 62 Fed. Cl. 66, 70 (2004). Because Plaintiff did not institute this action until March 18, 2004, nearly ten years after his discharge, Plaintiff's claims are time-barred, and this Court does not have jurisdiction to entertain this action.

**Equitable Tolling Does Not Apply**

Plaintiff contends that the Court should equitably toll the six-year statute of limitations from August 29, 1994, until August 2002, when he claims to have first received the May 4, 1993, final decision concerning his Article 138 complaint. Equitable tolling of the statute of limitations is to be sparingly applied. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). "[M]ere excusable neglect is not enough to establish a basis for equitable tolling; there must be a compelling justification for delay, such as 'where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" Martinez, 333 F.3d at 1318 (quoting Irwin, 498 U.S. at 96).

In Martinez, the Federal Circuit declined to decide whether equitable tolling is available against the United States under 28 U.S.C. § 2501. Martinez, 333 F.3d at 1318; see Joseph v. United States, 62 Fed. Cl. 415, 417 (2004) ("the Federal Circuit has yet to rule whether equitable tolling is

available under § 2501"); Carter, 62 Fed. Cl. at 70; Elliott v. United States, 61 Fed. Cl. 185, 187 (2004). Assuming, arguendo, that equitable tolling could apply here, Plaintiff has not demonstrated a sufficient factual basis for invoking that doctrine.

Plaintiff asserts that the decision granting his Article 138 Complaint "provided the critical evidence to establish that [CO Cosgriff] had an 'other-than-official' interest in the prosecution of plaintiff" and that he could not have brought suit without it. Pl.'s Resp. at 6. Because the Navy allegedly sent the May 4, 1993, final decision to Plaintiff's previous command and that organization did not forward the document to his correct address, Plaintiff argues that the Navy "concealed" this evidence, precluding him from bringing suit until he received a copy under FOIA in August 2002.[6]

Even assuming arguendo that Plaintiff did not know of the May 1993 decision until August 2002, this circumstance would not warrant equitable tolling. As a matter of law, the May 1993 final decision does not in and of itself provide an independent factual predicate for this lawsuit. At most, the final decision confirms allegations Plaintiff previously knew and raised. Plaintiff alleged that he was the subject of personal animosity and unfair treatment by his CO as early as 1992, at the time he filed his Article 138 Complaint, again in 1993, during the direct review of his court-martial, and in 1994, in his complaint filed in the Eastern District of Virginia. Moreover, in 2003, the NMCCA Judge presiding over Plaintiff's second petition for a writ of error coram nobis noted that "the petitioner was aware of this potential general issue [with CO Cosgriff] during direct review of his conviction and sentence [in 1993] because he raised unlawful command influence of his commanding officer as a specific assignment of error." Compl. Ex. B, at 6.[7] As such, the factual

---

[6] However, Plaintiff's own filings suggest that he knew his Article 138 complaint had been resolved in his favor well before he received the copy of the May 4, 1993 final decision via FOIA in May 2002. Some six years earlier, in 1994, Plaintiff filed an action in the United States District Court for the Eastern District of Virginia, referencing the favorable resolution of his Article 138 complaint. MacLean v. United States Navy, et al, Civ. No. 94-671-A (E.D. Va. 1994). Plaintiff alleged that: "[t]he Secretary of the Navy in the spring of 1993 ruled in part on behalf of the plaintiff and reinstated the plaintiff to Petty Officer and ordered back pay and the Navy service record be corrected." Def.'s Mot. To Dismiss App. at 5 ¶ 21. This paragraph in the complaint immediately followed a paragraph in which Plaintiff alleged that he had filed a 138 Complaint against Commander Cosgriff. Plaintiff nonetheless continues to assert that he did not have knowledge of the May 1993 decision stating that his Complaint in the Eastern District of Virginia alleged that the Secretary of the Navy upheld his Article 138 Complaint, whereas the May 1993 decision was issued by the Acting Assistant Secretary of the Navy for Manpower and Reserve Affairs. Plaintiff also asserts that the final decision ruled in his favor fully not in part. For the purposes of this motion, the Court need not determine when Plaintiff actually received the May 1993 decision, because even if he did not receive it until August 2002, his complaint is time barred as that decision merely provided support for factual allegations Plaintiff knew and raised years earlier.

[7] Before the NMCCA, Plaintiff asserted as a supplemental assignment of error that "'because he had filed an Article 138 complaint against his commanding officer, the commanding officer had

underpinnings of the instant lawsuit were not concealed from Plaintiff by virtue of the Navy's misdirecting the May 1993 decision to Plaintiff's wrong address.

In a similar scenario, the Federal Circuit, in Martinez, declined to apply equitable tolling where the plaintiff was aware he had suffered an injury, but delayed filing suit until he possessed stronger evidentiary support for his claims, stating:

> Mr. Martinez argues that until his wife issued her sworn statement regarding the alleged fabrication of charges against him, he had no basis on which to seek relief and thus, until that time, was excused from the requirement of filing his complaint. Mr. Martinez, however, was fully aware of the injury he had suffered at the time he was separated from active duty, and he was aware that, as he views the matter, he was the victim of fabricated charges. The only thing that was different after his ex-wife made her sworn statement in November 1993 was that his claim then had more support than his uncorroborated word. <u>The fact that he had sounder support for his claim at that point, however, is not a sufficient basis to establish equitable tolling</u>.

Martinez, 333 F.3d at 1318-19 (emphasis added). As in Martinez, Plaintiff's receipt of "sounder support" for his allegations in the May 1993 final Article 138 decision does not warrant application of equitable tolling. In short, this is not a case "'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period' or 'where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass,'" justifying equitable tolling. Martinez, 333 F.3d at 1317 quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).

Nor does the Court accept Plaintiff's argument that the Court should toll the statute of limitations from October 1994 through May 1998, because he was "legally disabled" within the meaning of 28 U.S.C. § 2501 and unable to bring suit. This statute contains its own tolling provision permitting a person under legal disability at the time the claim accrues to file within three years after the disability ceases. Plaintiff alleges that he suffered a serious spinal cord injury which precluded him from filing a complaint earlier than May 1998.[8] Even assuming, arguendo, that Plaintiff suffered

---

a personal interest in . . . [his] prosecution, and that the commanding officer's action in the pretrial process support that position.'" Compl., Ex. D at 6 (citation omitted).

[8] The standard for establishing a legal disability is high. Indeed, "[t]o rise to the level of a legal disability for purposes of tolling the statute of limitations, a plaintiff's . . . illness must be acute and extreme -- it must render the plaintiff 'incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities.'" Ware v. United States, 57 Fed. Cl. 782, 788 (2003) (citing Goewey v. United States, 222 Ct. Cl. 104, 112 (1979)). The Court expresses no opinion as to whether Plaintiff's alleged injury would constitute a "legal disability."

a "legal disability" from October 1994 through May 1998, the latest he could have brought suit would have been May 2001 -- almost three years before he filed this action in March 2004.[9]

**Plaintiff's Writs of Error Coram Nobis and Related Appeals Did Not Defer Accrual of Plaintiff's Cause of Action**

Alternatively, Plaintiff argues that because he was subject to a punitive discharge, his cause of action did not accrue until he exhausted "all available military judicial remedies." According to Plaintiff, this exhaustion requirement was not fulfilled until February 9, 2004, when the CAAF denied Plaintiff's writ-appeal petition relating to his second writ of error coram nobis. Plaintiff reasons that it would be inappropriate for this Court to review a punitive discharge resulting from a court-martial proceeding until the decision of the court-martial was final, and finality did not occur until the CAAF denied his second coram nobis petition. Pl.'s Suppl. Br. at 3-4. Plaintiff argues:

> The only military remedy available to plaintiff after first discovering the favorable documented final adjudication of his Article 138 Complaint, which provided the critical evidence to establish a fatal jurisdictional defect in the creation of the court-martial, was with the military appellate courts under the terms of the All Writs Act, 28 U.S.C. § 1651(a).[10] Thus, plaintiff first had to turn to the military courts with his constitutional due process claims under the All Writs Act before he could invoke this Court's jurisdiction under the Tucker Act and Fifth Amendment. Schlesinger v. Councilman, supra, 470 U.S. at 758; Gusik v. Schilder, supra, 340 U.S. at 131-32; Middendorf v. Henry, supra, 425 U.S. at 29; Williams v. Secretary of the Navy, supra, 787 F.2d at 558; Cooper v. Marsh, supra, 807 F.2d at 991.

Id. at 3-4 (emphasis added).

However, the writ of error coram nobis is not a mandatory military remedy that must be exhausted prior to filing suit here. Rather, it is a common law writ not limited to military tribunals raising an "error directed to a court for review of its own judgment and predicated on alleged errors

---

[9] Notably, from October 1994 through May 1998, Plaintiff filed 11 separate civil actions in federal district courts in Virginia, California, Florida, New Jersey, and the District of Columbia. Def.'s Mot. App. 6-7. Plaintiff also filed three appeals before the United States Court of Appeals for the Ninth Circuit during this time period. Id. at 7. Plaintiff offers no explanation as to why his disability prevented him from filing in this forum but not in other fora.

[10] One problem with this argument is that Plaintiff filed his first writ of error coram nobis on May 13, 2002, Compl. ¶ 16, before he allegedly first received the "favorable documented adjudication of his Article 138 complaint" pursuant to FOIA in August 2002. Pl.'s Suppl. Br. at 3.

9

of fact." Black's Law Dictionary at 362 ( 8th ed. 2004 ).[11]  See generally United States v. Morgan, 346 U.S. 502 (1954).  ("The writ of coram nobis was available at common law to correct errors of fact.  It was allowed without limitation of time for facts that affect the 'validity and regularity' of the judgment, and was used in both civil and criminal cases." (citations omitted).  While a writ of "error coram nobis may be filed with a military appellate court to collaterally attack a completed court-martial proceeding," Fisher v. Commander, 56 M.J. 691, 693 (2001), invoking such a remedy is not a prerequisite to filing suit in this Court under the exhaustion doctrine.  Resort to such an ancillary permissive remedy does not defer accrual of the cause of action for unlawful discharge.  As the Federal Circuit recognized in Martinez, 333 F.3d at 1304:

> [T]his court and the Court of Claims have long held that, in Tucker Act suits, a plaintiff is not required to exhaust a permissive administrative remedy before bringing suit.  As a corollary of that rule, the court has held that a plaintiff's invocation of a permissive administrative remedy does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy.

In contrast to this permissive writ, there are military remedies which must be exhausted before one may seek review of a judgment resulting from a court martial.  10 U.S.C. §§ 859-876 provide the administrative remedies for directly challenging a court-martial conviction resulting in a punitive military discharge, including review by the NMCCA, the CAAF, the Supreme Court,[12] and the Judge Advocate General.  See 10 U.S.C. § 801 et. seq.  This statutory framework provides for finality in the court-martial process, which is not affected by the subsequent filing of a writ of error coram nobis.  See, e.g., Cisse v. United States, 330 F. Supp. 2d 336, 340 (S.D.N.Y. 2004) (citing United States v. Mandanici, 205 F.3d 519, 524 (2d Cir. 2004)) (The writ of error coram nobis is not a substitute for appeal).  10 U.S.C. § 867(b) mandates a 60-day time limit for filing a petition for review of a decision of the Court of Criminal Appeals.  Because Plaintiff did not seek review of the June 1994 decision of the NMCAA in the CAAF within 60 days, his court-martial conviction and resultant discharge were final.  After expiration of the 60-day period for appealing the NMCCA's affirmance of his conviction and sentence, Plaintiff had exhausted his prescribed administrative remedies pursuant to 10 U.S.C. § 876.  Thereafter, on August 29, 1994 -- the date of Plaintiff's discharge from the Navy -- Plaintiff's path was clear to bring suit in this Court, and the statute of limitations ran six years later.

---

[11] Coram nobis literally means "before us," referring to the very court which rendered the judgment in which injustice is alleged to have been done.  The writ of coram nobis has been abolished in federal district courts by FED. R. CIV. P. 60(b) and superceded by relief as provided in that rule.

[12] Review in the Supreme Court is contingent upon review in the CAAF.  10 U.S.C. § 867(a).

## Conclusion

This action is barred under the six-year statute of limitations prescribed by 28 U.S.C. § 2501. Accordingly, Defendant's motion to dismiss is **GRANTED**. The clerk is directed to dismiss this action. No costs.

                                          s/Mary Ellen Coster Williams
                                          **MARY ELLEN COSTER WILLIAMS**
                                          **Judge**