ORIGINAL

# United States Court of Appeals for the Federal Circuit

FILED
SEP 5 2006
U.S. COURT OF FEDERAL CLAIMS

05-5149

NORBERT BASIL MACLEAN III,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

## Judgment

*ON APPEAL from the* United States Court of Federal Claims

*in CASE NO(S).* 04-CV-448

*This CAUSE having been heard and considered, it is*

*ORDERED and ADJUDGED:*

AFFIRMED

*ENTERED BY ORDER OF THE COURT*

*DATED* JUL 12 2006

Jan Horbaly, Clerk

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: ______ Date: 9/5/06

Issued as Mandate: SEP - 5 2006
COSTS:
Printing .................................. $294.08
Total.................................. $294.08

# United States Court of Appeals for the Federal Circuit

05-5149

NORBERT BASIL MACLEAN, III,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Daniel S. Silverman, Heller Ehrman LLP, of San Diego, California, argued for plaintiff-appellant.

Gerald M. Alexander, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Deputy Director. Of counsel on the brief was Lieutenant Commander Armando A. Rodiguez-Feo, Office of the Navy Judge Advocate General, of Washington, DC.

Appealed from: United States Court of Federal Claims

Judge Mary Ellen Coster Williams

# United States Court of Appeals for the Federal Circuit

05-5149

NORBERT BASIL MACLEAN III,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

---

DECIDED: July 12, 2006

---

Before MICHEL, Chief Judge, FRIEDMAN, Senior Circuit Judge, and GAJARSA, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This appeal challenges the Court of Federal Claims' dismissal, for lack of jurisdiction because of untimely filing, of a suit attacking a court-martial conviction. The appellant challenges his conviction on two grounds: (1) his invocation of military post-conviction proceedings either extended the limitations period for challenging his court-martial conviction or created a new cause of action for which there was a new period of limitations; and (2) he can invoke equitable tolling of the statute of limitations because of the government's concealment of an essential element of his challenge to the court-martial. We reject both of these contentions and therefore affirm the Court of Federal Claims' dismissal of his suit for lack of jurisdiction.

I

The basic facts relating to the issues we decide are largely undisputed. In December 1991, the appellant Norbert Basil MacLean III was a seaman in the Navy. His commanding officer, Commander Cosgriff, non-judicially punished him for absence without leave by a six-month suspended reduction in pay and transfer to another duty station. MacLean challenged that action by filing against Cosgriff a complaint of wrongs which, the Court of Federal Claims stated, "is a means of redress for a member of the armed services aggrieved by his commanding officer." MacLean v. United States, 67 Fed. Cl. 14, 15 n.3 (2005); see U.C.M.J. Art. 138; 10 U.S.C. § 938.

In November 1992, the Navy upheld the complaint of wrongs and on May 4, 1993, the Navy's action became final when an Assistant Secretary of the Navy approved it. As explained in Part II B below, MacLean contends that he did not receive notice of the Navy's action until August 2002.

Following an investigation by an investigating officer (whom Cosgriff appointed) of MacLean's alleged violations of military law, which included the absence without leave involved in the complaint of wrongs, Cosgriff recommended that MacLean be court-martialed. Although MacLean states that the investigating officer "held that reasonable grounds did not exist to believe Appellant committed the offenses alleged" and that "in general the evidence is very weak or nonexistent," the investigating officer nonetheless concluded that the offenses involving writing bad checks "have sufficient evidence."

The convening general court-martial authority, a rear admiral, followed Cosgriff's recommendation and preferred court-martial charges against MacLean. At the ensuing

general court-martial, MacLean pled guilty to writing bad checks, and was acquitted on the other charges. His sentence included a dishonorable discharge and forfeiture of pay and allowances. After unsuccessful appeals in the military courts, MacLean was discharged on August 29, 1994.

Approximately eight years later, MacLean filed in the United States Navy-Marine Corps Court of Criminal Appeals ("Navy Appeals Court") two successive applications for a writ of error coram nobis, which is similar to a habeas corpus challenge to a criminal conviction, except that it may be brought after the defendant has served his sentence. The Navy Appeals Court denied both applications and the Court of Appeals for the Armed Forces ("Armed Forces Court") denied review in both cases. MacLean v. United States, Cas. No. 02-CV-2250 (S.D. Cal. 2003); see United States v. MacLean, 57 M.J. 467 (C.A.A.F. 2002); MacLean v. United States, No. 9202821 (N.M. Ct. Crim. App. Dec. 22, 2002); MacLean v. United States, 59 M.J. 340 (C.A.A.F. 2004).

MacLean filed the present suit in the Court of Federal Claims on March 18, 2004. He sought invalidation of his court-martial conviction and other relief, including back pay. On the government's motion, the court dismissed the suit for lack of jurisdiction because it was filed after the statute of limitations had run. MacLean v. United States, 67 Fed. Cl. 14 (2005). It ruled that MacLean's claim accrued when he was discharged in August 1994, and that to be timely under the Tucker Act's statute of limitations, his claim had to have been filed within six years of that date. Id. at 18; see 28 U.S.C. § 2501. It also ruled that MacLean could not invoke equitable tolling, id. at 18-19, and that accrual of his claim was not deferred by his coram nobis proceedings, id. at 21.

II

In the Court of Federal Claims, the statute of limitations "is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988) (citations omitted). That statute, 28 U.S.C. § 2501, provides:

> Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

The Court of Federal Claims held that MacLean's claim accrued on August 29, 1994, when he was discharged from the Navy and his pay and allowances ended. As that court explained, "[i]t is well established that in a military discharge case, 'the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge.' Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc); see Bowen v. United States, 292 F.3d 1383, 1386 (Fed. Cir. 2002)." 67 Fed. Cl. at 18. MacLean's complaint, filed almost ten years after his discharge, on its face appears to be untimely and beyond the jurisdiction of the Court of Federal Claims.

MacLean offers two theories to avoid the limitations bar. He contends (A) that the statute of limitations was tolled by and during the coram nobis proceedings he filed in the military courts and (B) that the government should be equitably estopped from asserting the statute of limitations because it concealed from him until 2002 a critical fact in his coram nobis claims, namely, that he had prevailed in 1993 in his complaint of wrongs against Cosgriff.

A.1. MacLean filed his first coram nobis application in the Navy Appeals Court in June 2003, almost eight years after his Court of Federal Claims claim had accrued. At that point the statute of limitations had expired almost two years earlier, and the Court of

Federal Claims would have had no jurisdiction had he filed his suit in that court on the same day that he filed his coram nobis application.

The concept of tolling the statute of limitations is that particular actions suspend the running of the statute during the pendency of those actions. Cf. Stone Container Corp. v. United States, 229 F.3d 1345, 1352-55 (Fed. Cir. 2000); United States v. Cocoa Berkau, Inc., 990 F.2d 610, 615-16 (Fed. Cir. 1993); see also Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424 (1965). If the statute has already run before the alleged tolling action commences, however, there is nothing left to toll. In other words, tolling cannot be applied retroactively to extend a limitations period that has already expired before the tolling event occurs. See Butler v. Derwinski, 960 F.2d 139, 140-41 (Fed. Cir. 1992), overruled in part on other grounds by Bailey v. West, 160 F.3d 1360, 1368 (Fed. Cir. 1998) (en banc). Since the six-year limitations period in the Tucker Act had expired before MacLean filed his coram nobis applications, the filing and pendency of those applications could not and did not toll the statute of limitations.

2. Alternatively, MacLean contends that his filing of the coram nobis claims either extended his time for filing his Court of Federal Claims suit or that the military courts' denial of that relief created a new claim on which the statue of limitations did not begin to run until the military courts finally denied coram nobis relief in 2003. Our en banc decision in Martinez v. United States, 333 F.3d 1295, forecloses those contentions.

Martinez, an Army Reserve captain on active duty in 1991, was charged with various offenses in a non-judicial proceeding under Article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815, convicted of the charged offenses and ordered to

forfeit two month's pay. Apparently as a result, on February 25, 1992, he was separated from active duty, but remained in the Reserves. Subsequently he was twice passed over for promotion to major and was separated from the Reserves.

In March 1995, while still in the Reserves but no longer on active duty, Martinez filed an application with the Board for the Correction of Military Records challenging the Article 15 proceeding and seeking various ancillary relief. In August 1995, the Correction Board denied his application, and in March 1997 the Board denied reconsideration.

On August 17, 1998, more than six years after he was separated from active duty, Martinez filed suit in the Court of Federal Claims challenging the Article 15 decision and seeking back pay and other relief. The Court of Federal Claims dismissed the suit as untimely, and this court affirmed. This court held:

(a) "Martinez's cause of action for recovery of the monetary losses he suffered as a result of his discharge from active duty, and for the ancillary equitable relief that he sought in his complaint, accrued on the date of the discharge. The statute of limitations for filing suit in the Court of Federal Claims therefore began to run at that time." 333 F.3d at 1310 (footnote omitted).

(b) "His cause of action did not accrue when the Correction Board declined to overturn his separation, because that action did not cause him monetary injury, but merely failed to remedy the injury he had previously suffered." Id. at 1313.

(c) Seeking relief before the Correction Board was not a mandatory remedy in connection with challenging the Article 15 decision, but was discretionary action by Martinez. "[A] Tucker Act action for money accrues when the claimant has exhausted

all mandatory administrative remedies, and it does not 're-accrue' if and when the claimant subsequently seeks to exercise any optional administrative remedy including the remedy of application to a correction board." Id. at 1315.

The court "decline[d] to decide whether equitable tolling is generally available under section 2501 [of the Tucker Act], because even if we held that it is, Mr. Martinez has not made a sufficient factual showing to invoke equitable tolling in this case . . . ." Id. at 1318.

Although the present case differs in some respects from Martinez, the two cases are sufficiently similar that the principles announced and applied in Martinez are equally applicable here and call for the same conclusion: the Court of Federal Claims complaint was untimely filed and that court properly dismissed it for lack of jurisdiction.

The parallels between the two cases are striking. In both cases: (a) the claim asserted in the Court of Federal Claims was based on allegedly improper disciplinary proceedings that resulted in the termination of the plaintiff's active duty military service; (b) the claim accrued upon the plaintiff's separation from active duty, after he had exhausted his mandatory remedies for addressing the military action he challenged; (c) the plaintiff sought to extend the limitations period by invoking discretionary remedies; and (d) the plaintiff contended that these discretionary remedies either tolled the statute of limitations or created a new cause of action on which the statute had not yet run.

MacLean argues that Martinez does not apply to punitive discharge cases. He offers no persuasive reasoning for that conclusion, and we know of none. The critical question on this aspect of the case is when the individual's separation from active

military service became final, not the character of that separation, because it was that separation that caused the injury the Court of Federal Claims suit seeks to rectify. Since MacLean's Court of Federal Claims claim accrued on August 29, 1994, when he was discharged from the service, it is irrelevant that that discharge resulted from a court-martial sentence rather than from an administrative proceeding. As Martinez makes clear, his subsequent invocation of coram nobis proceedings did not extend the six-year limitations period for his Court of Federal Claims challenge to his conviction and discharge.

B. MacLean also contends that the statute of limitations should be equitably tolled because the government concealed from him an essential fact involving his coram nobis claim. His argument is as follows: his commanding officer Cosgriff was personally biased against him because of the successful complaint of wrongs he filed against Cosgriff. Despite that bias, Cosgriff reviewed an investigation of MacLean's alleged violations of military law, and recommended to Cosgriff's superior that MacLean be court-martialed. According to MacLean, Cosgriff's participation in the investigation tainted and invalidated the ensuing court-martial.

As noted, the Navy finally upheld its reversal of Cosgriff's non-judicial punishment of MacLean in May 1993. MacLean states that because the Navy sent notice of this action to him at his former duty station rather than at his new assignment, he did not receive such notice until August 2002, when he obtained it under the Freedom of Information Act. MacLean repeatedly describes the Navy's failure to promptly send him notice of the successful outcome of his complaint of wrongs as "concealment." He argues that such concealment was sufficient to establish equitable

tolling because he contends that the successful outcome of his complaint against Cosgriff was an essential element of his coram nobis claim and that he lacked the necessary information for asserting that claim until he received the information in 2002. He recognizes that in June 1994, the Navy appellate court in affirming his court-martial conviction, "reject[ed] inter alia, the error of unlawful command influence by" Cosgriff. He contends, however, that it was not until 2002, when he first obtained "documentary evidence" of his success in his complaint of wrongs, that he could assert in his coram nobis suit that there was a constitutional jurisdictional defect in the court-martial.

That alleged defect, however, was the very "unlawful command influence" that he had unsuccessfully asserted eight years before in his challenge before the military courts to his court-martial conviction. Calling it a jurisdictional defect does not change the basic nature of his contention. Here, as in Martinez, MacLean "was fully aware of the injury he had suffered at the time he was separated from active duty," and "[t]he fact that he had sounder support for his claim at that point, [in 2002, after receiving documentary evidence of his success in his complaint of wrongs] however, is not a sufficient basis to establish equitable tolling." Martinez, 333 F.3d at 1319.

As the Court of Federal Claims noted, we have not decided whether equitable tolling principles apply to review of court-martials under 28 U.S.C. § 2501. 67 Fed. Cl. at 19. Here, as in Martinez, "[w]e decline to decide whether equitable tolling is generally available under section 2501, because even if we held that it is, [MacLean] has not made a sufficient factual showing to invoke equitable tolling in this case." 333 F.3d at 1318.

The Supreme Court has recognized that in a civil action under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961-1968, for "fraudulent concealment" to equitably toll that Act's statute of limitations, "a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'" See Klehr v. A.O. Smith Corp., 521 U.S. 179, 194 (1997). We see no reason why the same limitations should not apply to an equitable tolling claim involving a court-martial (if one should exist). MacLean has shown neither fraudulent concealment by the government nor reasonable diligence on his part in discovering his claim.

His assertion of fraudulent concealment rests on the government's failure promptly to inform him of the successful outcome of his complaint of wrongs, which he asserts he needed to know about before he could further challenge his court-martial. The reason for the lack of notice to him was the Navy's sending the notice to his old duty station rather than to his new one, and the former's failure to forward it to the latter. This appears to be a clerical error. Moreover, the factual basis for his lack-of-timely-notice assertion is suspect in view of the statement, in a complaint he filed in the United States District Court for the Eastern District of Virginia (No. 94-671-A Par. 21) in 1994, that "[t]he Secretary of the Navy in the Spring of 1993 ruled in part on behalf of the plaintiff and reinstated the plaintiff to Petty Officer and ordered back pay and his Navy service record be corrected."

Nor has MacLean shown that, even under his theory, he exercised reasonable diligence in ascertaining the outcome of his complaint. He filed the complaint in 1991 or 1992, but waited approximately 10 years to file a Freedom of Information Act request for

the outcome. He had ample time to file such a request before the statute of limitations on his Court of Federal Claims claim ran in August of 2000.

Moreover, MacLean's argument that the successful outcome of his complaint of wrongs was an essential element of his coram nobis claim seems factually unsound. If, as MacLean contends (although he presents no facts to support it), Cosgriff was biased against him because of the complaint of wrongs he filed against Cosgriff, it would seem that such bias stemmed from MacLean's filing of the complaint rather than its successful outcome.

## CONCLUSION

The judgment of the Court of Federal Claims dismissing MacLean's suit for lack of jurisdiction because it was untimely filed, is

AFFIRMED.

BILL OF COSTS (File original and three copies with the Clerk within 14 days of judgment.)

Docket No(s): 05-5149 Caption: Norbert Basil MacLean, III v. The United States

The Clerk is requested to tax the following costs against: Norbert Basil MacLean, III, Plaintiff-Appellant

| ITEM | Number of copies | Number of pages | Actual cost | Allowable cost | Total billed | Total taxed |
|---|---|---|---|---|---|---|
| Docketing Fee (if paid in this court) | xxxxx | xxxxx | | | | |
| Table of Designated Materials (original) | xxxxx | | | 6.00 | | |
| Table of Compilation of Designated Materials (copying and collating) | | | | 0.08 | | |
| Brief (original) | xxxxx | 36.00 | 6.00 | 6.00 | 216.00 | 216. — |
| Brief (cover and binding) | 16 | xxxxx | 2.00 | 2.00 | 32.00 | 32. — |
| Brief (copying and collating) | 16 | 36 | 0.08 | 0.08 | 46.08 | 46.08 |
| Appendix (original - table of contents) | xxxxx | | | 6.00 | | |
| Appendix (covers and binding) | | xxxxx | | 2.00 | | |
| Appendix (copying and collating) | | | | 0.08 | | |
| Reply Brief (original) | xxxxx | | | 6.00 | | |
| Reply Brief (covers and binding) | | xxxxx | | 2.00 | | |
| Reply Brief (copying and collating) | | | | 0.08 | | |
| Other (describe): | | | | | | |
| GRAND TOTALS | | | | | $294.08 | $294.08 |

dab 9/5/06

City/County of Washington ) District/State of Columbia ) SS

I, Gerald M. Alexander, swear under penalty of perjury that the services for which costs are taxed were necessarily performed. Itemized statements of the costs incurred or invoices are attached. Copies of this bill were served on all parties. The certificate of service is attached.

Signature: [signature] Date: 7-26-06 Attorney for: UNITED STATES

FILED U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT JUL 26 2006 JAN HORBALY CLERK

RECEIVED JUL 26 2006 United States Court of Appeals For The Federal Circuit

CERTIFIED COPY I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE. UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT By: [signature] Date: 9/5/06

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 26th day of July, 2006, I caused to be placed in the United States mail, (first class mail, postage prepaid) copies of "BILL OF COSTS" addressed as follows:

DANIEL SILVERMAN
Heller Ehrman LLP
4350 La Jolla Village Drive, 7th Fl
San Diego, CA 92122-1246

Ena Goddard